DAVIS, Judge.
 

 On July 25, 2001, appellants
 
 [1]
 
 Anthony A. Wajer and Frances Wajer filed a complaint in the Circuit Court for Baltimore City against appellee Baltimore Gas and Electric Company (BGE) and twenty-nine other defendants, seeking damages for loss of consortium and injuries associated with appellant’s alleged contraction of mesothelioma, a form of cancer linked to asbestos exposure. Appellants brought their action under the theories of negligence, strict liability, and premises liability— with BGE identified as the property owner where appellant allegedly sustained his injuries. On April 7, 2003, appellee filed a motion for summary judgment, arguing that it was a premises owner and that it did not owe a duty to appellant because he was the employee of an independent contractor when the alleged injuries occurred. Appellee’s motion for summary judgment was granted on May 16, 2003.
 

 Appellants filed their timely notice of appeal on May 29, 2003, presenting six questions for our review, which we reorder and rephrase as follows:
 

 I. Did the trial court err by granting summary judgment with regard to appellants’ claim under § 414 of the Restatement (Second) of Torts?
 

 II. Did the trial court err by granting summary judgment regarding appellants’ claim under § 343?
 

 
 *232
 
 III. Did the trial court err by granting summary judgment concerning appellants’ claim under § 410?
 

 IV. Did the trial court err by granting summary judgment regarding appellants’ claim under § 413?
 

 V. Did the trial court err by granting summary judgment in regard to appellants’ claims under §§ 416-429?
 

 VT. Did the trial court err by granting summary judgment on the basis that appellant was not within the class of persons protected by Chapter 15 of the Restatement (Second) of Torts?
 

 We answer questions I and II in the negative and do not reach questions III, IV, V, and VI because they are not preserved for our review.
 
 [2]
 
 Therefore, we affirm the judgment of the circuit court.
 

 FACTUAL BACKGROUND
 

 Appellant is a seventy-nine-year-old retired general electrician whose career lasted for approximately forty-five years. In the course of his profession, he worked for an assortment of employers and performed electrical services at an extensive list of job sites. Although appellant was never directly employed by appellee, he did work as an electrician for various independent contractors during construction projects at three of appellee’s power plants: the Westport Power Plant (West-port), the Crane/Carroll Island Power Plant (Crane), and the Calvert Cliffs Nuclear Power Plant (Calvert Cliffs). Appellant alleges that, while he was working on appellee’s property, he was exposed to asbestos inhalation and subsequently developed non-malignant pleural changes, asbestosis, and mesothelioma. He does not assert that he directly handled asbestos products, but, instead, contends that his exposure occurred
 
 *233
 
 while working in proximity to other contractors who were installing asbestos insulation or products.
 

 From approximately 1947 to 1951, appellant was employed as an electrician by H.P. Foley Company (Foley). In 1948, appellee contracted with the Arundel Corporation (Arundel) to construct an additional generator at the Westport power plant. Arundel, acting as the general contractor, subcontracted with Foley to perform electrical work for the new generator construction. As a result, appellant was assigned by Foley to work at Westport for three or four months sometime in or about 1948. During that time, appellant claims he was exposed to insulation products containing asbestos, which were being installed by piping tradesmen working in the same vicinity at the Westport plant. The piping tradesmen were employed by W.K. Mitchell
 
 &
 
 Company, Inc. (Mitchell), which was the subcontractor employed to install a piping system for the generator.
 

 Appellant’s work at Westport was supervised, in part, by a BGE employee referred to as Mr. Sweeney. According to appellants, Sweeney was the electrical superintendent and he would instruct the general foreman on what electrical work to perform. The general foreman instructed appellant’s foreman, who then instructed appellant on what should be done. Appellant also described Sweeney as the “[sjafety man” and stated that Sweeney “had the authority to stop anybody who was doing the job unsafe.” Sweeney’s authority, however, did not permit him directly to inform appellant that he was improperly performing his job. Instead, Sweeney would report any safety concerns to the general foreman and, as noted above, the instructions would be passed down to appellant’s foreman and then to appellant.
 

 In February 1959, appellee contracted with Arundel to construct two generator units at the Crane plant. At the time, appellant was employed as an electrician by RiggsDistler, an Arundel subcontractor and, from April 1960 until June or July 1961, he worked on the construction project at the Crane site. Appellant received his work instructions from
 
 *234
 
 foremen employed by Riggs-Distler and he was not supervised or otherwise instructed by any employee of appellee concerning the performance of his job. Riggs-Distler also provided appellant with the tools and supplies necessary to complete his assigned work and it issued all of his paychecks. In addition to the contract with Arundel, appellee also contracted with the Babcock & Wilcox Company (Babcock) to install a boiler and to supply all necessary labor and manage all insulation work related to the boiler. Appellant maintains that he was exposed to asbestos at the Crane site while working in close proximity to the subcontractors who were hired by Babcock to install and insulate the boiler at the plant.
 

 In July 1967, appellee entered into a contract with the Bechtel Corporation (Bechtel) to perform the engineering and construction work for the new Calvert Cliffs power plant. From 1972 until 1974, appellant was employed as an electrician by Bechtel to work at the Calvert Cliffs plant, where he worked in the plant’s turbine and reactor buildings. Appellant did not have contact with any of appellee’s employees. His daily work instructions were provided by a Bechtel foreman and appellant either used his own tools and supplies or those furnished by Bechtel. According to appellant, he was exposed to asbestos because other subcontractors, working under a contract with Bechtel, used asbestos products at the plant, creating a dust in the air.
 

 As noted,
 
 supra,
 
 appellants filed a complaint on July 25, 2001, naming appellee a defendant under the theory of landowner liability. Appellee filed a motion for summary judgment, which the court granted on May 16, 2003. In granting the motion, the trial court issued a brief letter opinion stating that it had addressed very similar facts in a memorandum opinion in
 
 Mackenzie, et al. v. AcandS, Inc., et al.
 
 (Wilson)
 
 [3]
 
 
 *235
 
 and that it was attaching
 
 Wilson
 
 because the issues therein are applicable to the case
 
 sub judiee.
 
 The court opined:
 

 I do not see any significant difference between the legal issues involved in
 
 [Wilson
 
 ] and the instant case. I am attaching a copy of
 
 [Wilson
 
 ] and to the extent it is not inconsistent with the facts in this case, the law discussed therein is applicable to this case.
 

 In this case, as in
 
 [Wilson],
 
 the landowner hired an independent contractor to build a power plant. In both cases the independent contractor was [Bechtel], an international firm which carries out contracts worldwide. That company was at least as knowledgeable of the dangers of asbestos as was [appellee]. [Appellant] was an employee of the independent contractor or of companies hired by the independent contractor. In view of the strong public policy, which is expressed in the various cases in
 
 [Wilson
 
 ], this court again “holds that a landowner owes no duty to an employee of an independent contractor ... [t]o find otherwise would effectively constitute an ‘end run’ around the worker’s compensation law and undermine its care policy.”
 

 (Citation omitted.)
 

 LEGAL ANALYSIS
 

 Preliminarily, we will address appellee’s contention that appellants have failed to preserve for appeal all the arguments raised in their brief. Appellants’ brief focuses largely on the exceptions to the general rule contained in Chapter 15 of the Restatement (Second) of Torts, which states that the employer of an independent contractor is not liable for the negligence of the contractor or his or her employees. Restatement (Second) of Torts § 409 (1965);
 
 Rowley v. City of Baltimore,
 
 305 Md. 456, 461, 505 A.2d 494 (1986). Exceptions to the general rule are set forth in §§ 410-429 of the Restatement. Sections 410-415 address exceptions in which the injured plaintiff claims actual fault on the part of an employer of an independent contractor, while §§ 416-429 deal with claims premised on the
 
 *236
 
 vicarious liability of an employer of an independent contractor.
 
 Rowley,
 
 305 Md. at 462-63, 505 A.2d 494. Although the duties provided in §§ 410-429 clearly run to general members of the public under the proper circumstances, it has not been fully determined in Maryland whether the employees of an independent contractor working on the landowner’s property are within the class of persons protected under §§ 410-429.
 
 Brady v. Ralph M. Parsons Co.,
 
 327 Md. 275, 282-283, 609 A.2d 297 (1992) (discussing
 
 Rowley,
 
 305 Md. at 466-75, 505 A.2d 494).
 

 Appellants assert that the exceptions contained in Chapter 15 of the Restatement create a landowner duty that runs to the employees of independent contractors and that under §§ 410, 413, 414, and 416-429 appellee owed a duty to appellant. Consequently, appellants maintain that the trial court erred by granting appellee’s motion for summary judgment on the grounds that a duty did not exist. In response, appellee submits that appellants failed to raise the issue of whether the exceptions collected in Chapter 15 of the Restatement are generally applicable to employees of independent contractors. Additionally, appellee avers that appellants specifically stated in the court that they were not raising arguments under §§ 410, 413, and 416-429. According to appellee, appellants limited their opposition to the motion for summary judgment to arguments under § 414 and the “safe workplace” doctrine, which is explained in § 343 of the Restatement (Second) of Torts.
 

 “Ordinarily, the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court----” Md. Rule 8-131(a). “The ‘primary purpose of Rule 8-131(a) is to ensure fairness for all parties in a case ...,’ which is accomplished by ‘requiring) counsel to bring the position of their client to the attention of the lower court’ ” so that the trial court has an opportunity to rule upon the issues presented.
 
 Romano & Mitchell v. LaPointe,
 
 146 Md.App. 440, 456, 807 A.2d 139
 
 *237
 
 (2002) (quoting
 
 Davis v. DiPino,
 
 337 Md. 642, 647-48, 655 A.2d 401 (1995)).
 

 In their opposition to appellee’s motion for summary judgment, appellants argued:
 

 [The instant case] is not a vicarious liability case and [appellee’s] own conduct is at issue as opposed to conduct of other contractors or subcontractors working along with [appellant] at [appellee’s] power stations.
 
 [Appellants] here do not claim any of the vicarious liability exceptions to premises owner non-liability enunciated in Restatement (Second) of Torts, §§ 4,16-4,29. [Appellants] do not claim inherent danger, ultra hazardous activity or peculiar risk and do not claim that [appellee] must stand in the shoes of any other contractor or subcontractor.
 
 It is for the trier of fact to determine whether [appellee] is responsible for its unsafe work places and whether it is liable to [appellants] under Maryland law.
 

 (Emphasis added.)
 

 Section 410 of the Restatement provides that “[t]he employer of an independent contractor is subject to the same liability for physical harm caused by any act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself.” Also, § 413 states that “[o]ne who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if....” In our opinion, § 410 represents a situation where the employer/premise owner would be required to stand in the shoes of the independent contractor and § 413 deals with liability arising from employment involving a peculiar risk. Pursuant to their opposition to the motion for summary judgment, appellants expressly indicated that they were not claiming “peculiar risk” or “that [appellee] must stand in the shoes of any other contractor or
 
 *238
 
 subcontractor.” Although not identified by section number, appellants clearly intended not to raise arguments under §§ 410 and 413. Further, in relation to §§ 416-429, appellants specifically designated those sections, asserting they were not raising claims thereunder.
 

 In addition to their expressed intentions to forgo argumentation under §§ 410, 413 and 416-429, the general tenor of appellants’ opposition to appellee’s motion for summary judgment and their oral presentation at the summary judgment hearing suggest that their primary argument was focused on the applicability of § 343 and § 414 of the Restatement. Appellants concentrated on the latent danger element of § 343 and on the amount of control appellee exerted over the three work sites in question, which is indicative of § 414.
 
 [4]
 
 When appellants’ overall arguments are viewed in conjunction with their expressed intentions, it is apparent that they were not raising the exceptions provided by §§ 410 and 413 and, therefore, they did not present those issues to the circuit court for consideration.
 

 Appellants also suggest that the issues were properly raised in the circuit court proceedings by appellee. According to appellants, §§ 410, 413, and 416-429 were raised in appellee’s motion for summary judgment, in which it discussed whether the exceptions in §§ 410-429 were applicable to the instant case. In other words, appellants claim that appellee, by addressing all the exceptions in its motion for summary judgment, placed §§ 410, 413, and 416—429 before the court. Appellants, however, fail to consider that their opposition to appellee’s motion for summary judgment had the effect of narrowing the issues. Appellee’s motion for summary judgment discussed all the exceptions because it could not fully anticipate from the complaint which exceptions appellants would invoke. After appellants filed their opposition to summary judgment, the issues were narrowed to the exceptions set forth in §§ 343 and 414, as was evidenced by the parties’
 
 *239
 
 oral argument at the subsequent hearing regarding the motion for summary judgment.
 

 Finally, appellants assert that the trial court’s attachment of
 
 Wilson
 
 to the order granting summary judgment indicates that it considered and ruled upon all the exceptions. They note that
 
 Wilson
 
 specifically addressed §§ 410, 413, 414, and 416-429 and aver that the court attached the opinion as a response to their arguments under those sections. The trial court had no other reason to attach
 
 Wilson,
 
 maintain appellants, and therefore §§ 410, 413, and 416-429 were decided by the court and are now before this Court.
 

 As explained,
 
 supra,
 
 the court drafted a brief letter opinion indicating that it did not “see any significant difference between the legal issues involved in
 
 [Wilson
 
 ] and the instant case.” The trial court then stated that it was attaching
 
 Wilson
 
 “to the extent it is not inconsistent with the facts in this case, the law discussed therein is applicable to this case.” It is our opinion that the court attached
 
 Wilson,
 
 1) because there were factual similarities between it and the case
 
 sub judice,
 
 2) for its policy discussion of the general rule against the premise owner liability for injury caused by independent contractors or their servants, and 3) to resolve appellants’ argument under § 414.
 

 Contrary to appellants’ contention, the attachment of
 
 Wilson
 
 was not intended to be applicable in all aspects. For example,
 
 Wilson
 
 did not directly address § 343, although appellants based many of their assertions on the safe workplace doctrine in § 343. Therefore, the inclusion of a discussion concerning §§ 410, 413, and 416-429 in
 
 Wilson
 
 does not necessarily indicate that the court decided those issues in the instant case. Instead, appellants did not raise arguments under §§ 410, 413, and 416-429 and, as the trial court’s opinion letter specified,
 
 Wilson
 
 was attached “to the extent it is not inconsistent with the facts in this case.”
 

 For the aforementioned reasons, we hold that the exceptions provided in §§ 410, 413, and 416-429 were not raised in or decided by the trial court and, thus, they are not preserved
 
 *240
 
 for review pursuant to Md. Rule 8-181(a). The general applicability of the exceptions contained in Chapter 15 of the Restatement, however, was implicitly raised in appellants’ claim under § 414. Therefore, we will address that issue,
 
 infra,
 
 but only to the extent that it is necessary for analyzing appellants’ assertions under § 414.
 

 I
 

 Appellants aver that the court erred by dismissing their claim under § 414. They assert that appellee exercised sufficient control over its various independent contractors in order to subject itself to liability under § 414. According to appellants, appellee owed appellant a duty of reasonable care to protect him from the injuries that were caused by the independent contractor’s servants working in close proximity.
 

 The trial court may grant summary judgment only when “there is no genuine dispute of material fact” and “the party in whose favor judgment is entered is entitled to judgment as a matter of law.” Md. Rule 2-501 (e);
 
 Bagwell v. Peninsula Regional Med. Ctr.,
 
 106 Md.App. 470, 488, 665 A.2d 297 (1995). If there is no dispute of material facts, our role is to determine whether the trial court was legally correct.
 
 Beatty v. Trailmaster Products Inc.,
 
 330 Md. 726, 737, 625 A.2d 1005 (1993);
 
 Tennant v. Shoppers Food Warehouse Md. Corp.,
 
 115 Md. App. 381, 386, 693 A.2d 370 (1997).
 

 In order to defeat a motion for summary judgment, the party opposing the motion must present admissible evidence demonstrating the existence of a dispute of material fact.
 
 Tennant,
 
 115 Md.App. at 386, 693 A.2d 370. The evidence offered to show the existence of a dispute of fact must be sufficiently detailed and precise to illuminate its nature.
 
 Bagwell,
 
 106 Md.App. at 489, 665 A.2d 297. “[T]he mere existence of a scintilla of evidence ... is insufficient to preclude the grant of summary judgment.”
 
 Beatty,
 
 330 Md. at 738-39, 625 A.2d 1005. There must be evidence upon which the jury could reasonably find for the party opposing summary judgment.
 
 Id.
 
 at 739, 625 A.2d 1005. Moreover, “[i]n
 
 *241
 
 determining whether a summary judgment has properly been granted, an appellate court must consider the facts stated, and the proper inferences to be drawn therefrom, in the light most favorable to the party against whom the motion is made.”
 
 Burwell v. Easton Memorial Hospital,
 
 83 Md.App. 684, 687, 577 A.2d 394 (1990).
 

 Section 414 provides:
 

 One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his [or her] failure to exercise his [or her] control with reasonable care.
 

 Section 414 applies “where there is retention of control over the operative detail of the work.”
 
 Brady,
 
 327 Md. at 283, 609 A.2d 297. Comment c to § 414 details the limitations upon the application of the rule:
 

 In order for the rule stated in this [s]ection to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he [or she] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his [or her] methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his [or her] own way.
 

 In order to satisfy the requirements of the retention of control doctrine under § 414, appellants must show that appellee “ ‘had the right to control the details of [the asbestos installers’] movements during [their] performance of the business agreed upon.’ ”
 
 Parker v. Neighborhood Theatres, Inc.,
 
 76 Md.App. 590, 601, 547 A.2d 1080 (1988) (quoting
 
 Cutlip v. Lucky Stores, Inc.,
 
 22 Md.App. 673, 678, 325 A.2d 432 (1974)).
 
 *242
 
 Additionally, “[t]he key element of control, or right to control, ‘must exist[ ] in respect to the very thing from which the injury arose.’ ”
 
 Id.
 
 (quoting
 
 Gallagher’s Estate v. Battle,
 
 209 Md. 592, 602, 122 A.2d 93 (1956)).
 

 Appellants submit that appellee retained operative control over the Westport, Crane, and Calvert Cliffs job sites through its “General Conditions of Contract” (General Contract), which appellee executed with the independent contractors at all three sites. The “Contract Safety Regulations” portion of the General Contract provides, in pertinent part:
 

 1. Preliminary Survey of Conditions.
 

 Before beginning work the Contractor shall confer with [appellee’s] Engineer regarding hazardous conditions which may be encountered and shall strictly follow his precautionary instructions.
 

 14. Inspection.
 

 [Appellee] may make inspections from time to time during the progress of the Contractor’s work, and the Contractor shall promptly correct any condition or method of operation which such inspection indicates is in contravention of safe practice and operation.
 

 15. Careless Workers.
 

 Any employee of the Contractor who, in the judgment of [appellee], persists in performing his duties in a careless or negligent manner, may be barred from the property of [appellee].
 

 According to appellants, the safety procedures in the General Contract permitted appellee to enjoy a retention of control sufficient to trigger § 414 because it could inspect the contractor’s work, change the contractor’s conduct and methods’of operation, and exclude the contractor’s employees from the work site if it found them to be careless. Also, they maintain appellee’s electrical superintendent at the Westport plant,
 
 *243
 
 Sweeney, represented a constant on-site monitoring and controlling of the safety practices of the electrical tradesmen.
 

 Although appellants are correct that appellee retained some measure of control, the type of control is not that contemplated by § 414. Under the General Contract’s safety provisions, appellee did not have the “right to control the details of [the contractors] movements during [their] performance of the business agreed upon.” The safety provisions were a practical coordination of safety efforts and they only reserved the right for appellee to hedge or alter the contractor’s performance as it related to safety. Appellee could not dictate in detail which procedures or methods the contractors instituted but could only request that an unsafe condition be changed or discontinued. The operative detail concerning what and how products were to be applied during construction remained in the control of the independent contractors.
 

 Appellants also cite other provisions within the General Contract, which they allege illustrate appellee’s control over the three sites in question. Appellants direct our attention to the following contract conditions:
 

 2. Materials and Appliances.
 

 Unless otherwise specified, all materials shall be new and of the best of their respective kinds. All work shall be neatly and skillfully done exactly as specified and detailed, and if not mentioned in detail, exactly as [appellee] shall direct. The Contractor shall furnish detailed drawings for approval of [appellee], whenever [appellee] may deem it necessary.
 

 5. Alterations and Extra Work.
 

 The Contractor shall not make any changes in the work as covered by the drawings and specifications, nor shall he do any extra work without definite written instructions from [appellee]. In the event that changes seem desirable they shall be reported to [appellee] who, if [it] approves the
 
 *244
 
 same, will arrange for changes in the drawings and specifications or for written instructions on such alterations.
 

 6. Correction of Work Before Final Payment.
 

 The Contractor shall promptly remove from the location of the work all materials condemned by [appellee] as being unfit, unsafe, unsound or at variance with the true intent and purpose of the contract, whether incorporated in the work or not, and shall promptly replace and re-execute his own work in accordance with the contract and without expense to [appellee] and shall bear the expense of making good all work of other contractors destroyed or damaged by such removal or replacement.
 

 18. Contractor’s Check of Drawings and Field Conditions.
 

 The Contractor shall test all figures on the drawings before starting the work, and any discrepancies or clerical errors that shall exist shall be brought to the attention of [appellee], who shall make the necessary corrections. Should any figures be omitted from the general drawings or from the details, or should any error appear in either, it shall be the duty of the Contractor to give written notice thereof to [appellee], and in no case to proceed with the work without giving such notice and receiving definite instructions as to how to proceed.
 

 The provisions of the General Contract which appellants point out reserved unto appellee the right to require conformity with the specifications and construction plans of contract and did not give it the right to control operative detail or manner in which the independent contractors performed their work. There is nothing to indicate that the independent contractors were not free to choose the methods, techniques, or sequences of the work to be performed. Appellee’s supervision over the specifications of the projects is not sufficient control to subject it to liability under § 414.
 

 
 *245
 
 Moreover, even assuming the safety provisions or other provisions of the General Contract were adequate expressions of control, appellants presented no evidence to illustrate that the right of control existed “in respect to the very thing from which the injury arose.” There is no evidence to suggest that appellee controlled the installation of asbestos products, which appellants maintain are the source of their injury. The independent contractor agreements for Westport, Crane, and Calvert Cliffs indicate that the contractors were responsible for the supervision and labor associated with the asbestos installation and appellants have not introduced any evidence to suggest otherwise.
 

 Having concluded that appellee does not owe appellants a duty under § 414 and that appellants have not preserved for appeal arguments under the other exceptions of Chapter 15 of the Restatement, we see no reason to decide whether appellant, who worked as an employee of an independent contractor, falls within the class of persons protected by §§ 410-429.
 

 II
 

 Appellants also contend that the trial judge erred by granting summary judgment in favor of appellee with regard to their claims under the safe workplace doctrine as set forth in § 343. More specifically, appellants assert that there was sufficient evidence to suggest that appellee knew of the asbestos hazards, knew of the planned asbestos installation, and knew that installation would create a hazardous dusty atmosphere in which appellant would be required to work. Appellants categorize the asbestos products used at the three job sites as a latent defect for which appellee was required to warn appellant.
 

 Section 343 states:
 

 A possessor of land is subject to liability for physical harm caused to his [or her] invitees by a condition on the land if, but only if, he
 

 
 *246
 
 (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
 

 (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
 

 (c) fails to exercise reasonable care to protect them against the danger.
 

 “As applied to contractor’s employees, § 343 is often referred to as the ‘safe workplace’ doctrine under which one who employs an independent contractor has a duty to provide a safe workplace for the employees of the contractor.”
 
 Rowley,
 
 305 Md. at 465, 505 A.2d 494. Section 343 requires the premise owner to notify the employees of the contractor of “any latent or concealed dangers, provided he [or she] knows of the condition or with the exercise of ordinary care should have known of it.”
 
 Id.
 
 The owner must furnish a safe place to work for the employees of an independent contractor as though they were his or her own employees.
 
 Le Vonas v. Acme Paper Board Co.,
 
 184 Md. 16, 20, 40 A.2d 43 (1944).
 

 Although the premise owner must exercise reasonable care to ensure that his or her property is safe for the employees of an independent contractor at the onset of the work, the owner will not stand in the shoes of the contractor for liability during the progress of work unless it is demonstrated that he or she has “control of the details and the manner in which the work is to be accomplished.”
 
 Le Vonas,
 
 184 Md. at 20, 40 A.2d 43. Liability rests upon the owner when the stipulated work done on the premises remains under his or her control and the injuries to the employee of the independent contractor arise out of an abnormally dangerous condition.
 
 Id.; Cutlip,
 
 22 Md.App. at 683, 325 A.2d 432. An abnormally dangerous condition, however, does not include work product of the contractor after he or she takes control of the premises and, therefore, does not “include conditions which arise after and as a result of the independent contract.”
 
 Cutlip, 22
 
 Md.App. at 683, 325 A.2d 432.
 

 
 *247
 
 The necessary control under § 343 is analogous to the control under § 414.
 
 Wells v. General Electric Co.,
 
 807 F.Supp. 1202, 1211 (D.Md.1992). As discussed,
 
 supra,
 
 appellee did not exercise control over the Westport, Crane, and Calvert Cliffs sites and, consequently, appellee did not retain sufficient control for an action under § 343. Furthermore, the asbestos products used at the three work sites in question were not latent conditions that pre-existed the independent contractors taking control of the premises. The asbestos insulation and other products containing asbestos were part of the independent contractors’ work product. They were brought onto appellee’s premises by the contractors and, thus, arose after and as a “result of the independent contract.” Accordingly, we hold that the trial court properly granted summary judgment concerning appellants’ claim under § 343.
 

 JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.
 

 COSTS TO BE PAID BY APPELLANT.
 

 [1]
 

 . Reference hereinafter to ''appellant” in the singular indicates Anthony A. Wajer.
 

 [2]
 

 . In its brief, appellee asserts that appellants did not raise and the trial court did not rule upon questions III, IV, V, and VI. As explained,
 
 infra,
 
 we agree and, therefore, we decline to address the arguments set forth by appellants in those questions.
 

 [3]
 

 . Wilson was one of the named plaintiffs in
 
 Mackenzie
 
 and was the party affected by the memorandum opinion. Because the court referred to the case as the "Wilson opinion,” we also will identify the case as
 
 Wilson
 
 hereinafter.
 

 [4]
 

 . See the discussion,
 
 infra,
 
 dealing with §§ 343 and 413.