69 A.3d 53

Megan S. MEESE et al.

v.

Tim MEESE.

No. 827, Sept. Term, 2011.

Court of Special Appeals of Maryland.

June 26, 2013.

Brian M. Barke (James S. Maxwell, Maxwell & Barke, LLC, on the brief), Rockville, MD, for Appellant.

Stewart Andrew Sutton, Germantown, MD, for Appellee.

Panel: KEHOE, WATTS and ARRIE W. DAVIS, (Retired, Specially Assigned), JJ.

DAVIS, J.

Megan S. Meese, appellant, and Timothy Meese, appellee, have a long and sad history of litigation that began with the break-up of their marriage and subsequent divorce in 2007. They are before us for the fourth time on appeal from a decision of the Circuit Court for Montgomery County granting summary judgment in favor of Timothy and against both Megan and Charles Anthony Armstrong Miller, Trustee of the 3316 Weller Road Trust (the Trustee), also an appellant herein, in an action to vacate the May 5, 2005 transfer of real property by Megan to the 3316 Weller Road Irrevocable Trust (the Trust).[1]

On April 11, 2008, Timothy filed a complaint against both Megan and the Trustee seeking to vacate Megan's transfer of property to the Trust on the ground that it was a fraudulent conveyance. The action was stayed pending the outcome of a dispute in the parties' divorce action over marital property and a monetary award. On March 17, 2011, the trial court rendered a final ruling in the divorce action and lifted the stay in the action seeking to vacate the conveyance. Thereafter, Timothy filed a motion for summary judgment with respect to his complaint to vacate the transfer of property, which both Megan and the Trustee opposed. After a hearing on May 10,

---

1. Charles Anthony Armstrong Miller, the trustee of the Trust, is Megan's brother. Charles H. Miller is the father of both Megan and Charles Anthony Armstrong Miller.

2011, the circuit court granted Timothy's motion for summary judgment and this timely appeal followed.

## ISSUES PRESENTED

Megan and the Trustee present the following two issues for our consideration:

I. Whether the trial court erred in finding that there were no genuine issues of material fact in granting summary judgment in a fraudulent conveyance action where the underlying transaction involved the return of a family home from a daughter to her father, where the original transfer of the home from the father was not at arm's length, was for less than fair market value, where the father had been given a right to reside in the home for life, where the father had been threatened with eviction by his son-in-law, and where the daughter's position in the fraudulent conveyance action was that the return of the home to her father was not gratuitous, but was in resolution of her father's claim that he was entitled to the return of the home because his original transfer was void and/or voidable under the circumstances; and,

II. Whether a finding of "dissipation" of a marital asset in a divorce case requires a finding of "fraudulent conveyance" against the recipient transferee of that marital asset in a subsequent lawsuit by the non-transferring spouse against the transferee who was not a party to the divorce.

For the reasons set forth below, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this case was set forth fully in our most recent unreported opinion, *Meese v. Meese*, No. 499, Sept. Term 2011 (filed June 18, 2012), but for ease of reference, we shall include a brief review of the facts here. Timothy and Megan Meese were married on August 1, 1998 and, shortly thereafter, moved into a home owned by Megan's father, Charles H. Miller, and located on Weller Road in Silver Spring. Miller had owned the home since the 1970s

and Megan had lived there as a child. Timothy and Megan lived with Charles in his home rent-free.

When Charles retired, he entered into an agreement with Megan and Timothy pursuant to which they would purchase the home from him. Megan and Timothy assumed the remaining mortgage on the home and signed a balloon note for $30,000, in favor of Charles, which was to come due upon the first to occur of (1) the sale of the home; (2) sixty days after Charles' death; or (3) November 29, 2015. The balloon note did not bear interest and was guaranteed by Megan and Timothy with the home as collateral. The balloon note and assumed mortgage were valued at approximately $150,000, which was about $30,000 less than the appraised value of the home at the time of the transfer. Because Charles' mortgage contained a due-on-sale clause, the transfer of the home was made solely in Megan's name.[2] In exchange, Charles would live in the home, rent-free, for the rest of his life and, if the home was sold prior to his death, the couple agreed to provide substitute rent-free housing for him until his death.[3]

---

**2.** A due-on-sale clause allows a mortgage holder to accelerate and collect all amounts due on a mortgage when the associated property is sold. A due-on-sale clause may not be invoked when the sale of property is from a parent to a child. 12 U.S.C. 1701j–3(d)(6).

**3.** The agreement between Miller, Megan and Timothy provided:

### Recitals

1. Charles H. Miller has owned the house located at 3316 Weller Road, Silver Spring, Maryland 20906 ("the house") for many years.
2. Charles H. Miller wishes to sell the house to his daughter, Megan S. Meese, and her husband, Timothy S. Meese, for approximately $150,000.00.
3. Megan and Timothy Meese have moved into the house with Charles H. Miller and wish to purchase the house from him for approximately $150,000.00.
4. The parties wish for Megan and Timothy Meese to take over responsibility for all mortgage payments and to pay Charles H. Miller an additional $30,000.00 evidenced by a note and secured by a deed of trust on the house.
5. The fair market value of Charles H. Miller's house exceeds $150,000.00.
6. Charles H. Miller will need a place to live after he sells the house to Megan and Timothy Meese.

Megan and Timothy's relationship deteriorated and eventually Megan told Timothy she wanted a divorce. Timothy told Charles that he needed to look for a new place to live and Charles then realized that the home sale transaction did not provide him with a life estate in the home. In an attempt to ensure that Charles would be able to live in the home until his death, Megan transferred title of the home to the Trust without consideration. Charles was the beneficiary of the Trust and, upon his death, the Trust would cease to exist and the property would revert to Megan in fee simple.

Subsequently, Timothy filed in the Circuit Court for Montgomery County a complaint for absolute divorce. The parties agreed to joint custody of their children and to split all marital property evenly, with the exception of the home. Megan took the position that the home was not marital property because it was a gift from her father to her. Timothy took the position that the home was marital property and that the agreement concerning the home showed it was a sale and not a gift to Megan.

After hearing argument, the circuit court delivered an oral ruling in which it declined to determine whether the home was marital property and further declined to make a monetary award or award attorney's fees to either party. Timothy filed

---

7. Megan and Timothy Meese wish to provide a place for Charles H. Miller to live with them in their household as long as he desires.

**Terms**

1. The parties to this agreement hereby agree that in exchange for the sale of the house by Charles H. Miller to Megan and Timothy Meese for $150,000.00, Megan and Timothy Meese will provide Charles H. Miller with accommodations in their house for as long as Charles H. Miller lives.
2. These accommodations shall include a bedroom of his own and access to the other parts of the house.
3. If Megan and Timothy Meese sell the house, they will still be obligated to provide Charles H. Miller with accommodations in whatever housing they may move into.
4. Charles H. Miller will not be required to pay any rent or utilities for his accommodations.
5. This agreement is binding on all of the parties as well as on their successors and assigns.

an appeal and, in an unreported opinion, *Meese v. Meese*, No. 177, Sept. Term 2007 (filed April 17, 2008), (*"Meese I"*), we vacated the circuit court's order denying the monetary award and remanded for further proceedings. After hearings on remand, the circuit court determined that the home was not marital property, but rather a gift from Charles to Megan. Nevertheless, the court awarded Timothy a monetary award of $8,500, an amount which the court determined was equal to the present value of his portion of the balloon note.

Timothy filed a second appeal to this Court in which he argued that the home was marital property and that, by transferring the home to the Trust, Megan had intentionally dissipated the value of the home in order to prevent him from receiving a monetary award. Timothy asserted that he was entitled to a monetary award in line with the 50/50 split that he and Megan had agreed to for all other marital property. In our second unreported opinion, *Meese v. Meese*, No. 79, Sept. Term 2009 (filed July 23, 2010)(*"Meese II"*), we reversed, holding that the home was marital property, that the parties' agreement was a contract for the sale of the home that was supported by consideration and that Megan's transfer of the property to the Trust amounted to dissipation as a matter of law. In light of our decision to reverse the circuit court's determination that the property was non-marital, we vacated the monetary award and the denial of attorney's fees. Again, we remanded for further proceedings.

After a hearing on remand, the circuit court granted Timothy a monetary award in the amount of $30,000, but denied his request for attorney's fees. Timothy again appealed to this Court on the ground that the monetary award was inequitable. In an unreported opinion, *Meese v. Meese*, No. 499, Sept. Term 2011 (filed on June 18, 2012) (*"Meese III"*), we held that, in making the monetary award, the circuit court properly evaluated the required factors and did not abuse its discretion in granting Timothy a monetary award of $30,000. We also held that the circuit court was legally correct in determining that neither party was entitled to attorney's fees.

On April 11, 2008, while the divorce case was being litigated, Timothy filed a complaint against Megan and the Trustee in which he sought to nullify Megan's fraudulent conveyance of the home to the Trust. Timothy claimed that Megan transferred title to the house to the Trust "with the intent to hinder, delay, or defraud" him, and that the transfer was made without any consideration, at a time when Megan was "legally insolvent or rendered insolvent by the conveyance." That proceeding was stayed until March 17, 2011. Shortly thereafter, Timothy filed a motion for summary judgment in which he argued that Megan's transfer of the home to the Trust was a fraudulent conveyance because the property was conveyed for no consideration at a time when Megan was insolvent. He pointed out that this Court had determined that the home was marital property, that Megan had dissipated that asset by transferring it to the Trust and that she had done so with the intent of defrauding Timothy as a creditor. Timothy asserted that, based on prior court determinations that Megan had dissipated marital property, she was collaterally estopped from re-litigating the issue that she had fraudulently conveyed the property to prevent him from enforcing his monetary award as a judgment lien against the property.

Megan opposed Timothy's motion for summary judgment, arguing that there was a factual dispute regarding whether she was insolvent at the time of the May 5, 2005 transfer of the property and whether there was fair consideration for the transfer. In addition, she asserted that Timothy had received all that he was entitled to receive in the divorce case, that he never requested that the transfer be set aside and that a finding of dissipation does not require that the transfer be set aside.

After a hearing on the motion, the circuit court ruled, in part, as follows:

> Megan argues that there are material factual questions as to whether she was insolvent at the time of the transfer as to whether the transfer was for consideration, much less fair consideration.

On the record before me, the only conclusion that a rational fact-finder could reach is either that there was no consideration for the transfer or that the consideration that is purported to exist by Megan is invalid consideration as a matter of law, constituting either past consideration or a mere moral obligation.

In addition, the only promise that Tim and Megan made to dad that would be extant is if we're not in the house, you get to live with us wherever we are. That can still be done. So, the promise pointed to does not relate to the transfer.

The Court concludes that there are no genuine issues of a material fact and that Tim Meese is entitled to judgment, as a matter of law. As a consequence, the motion for summary judgment is granted. The conveyance of the real estate at 3316 Weller Road in Wheaton, Maryland, more fully described in the land records, is hereby vacated.

And I'm going to order that Mr. Sutton is appointed trustee to record a quit claim deed to re-convey the subject property back to Megan Meese.

## STANDARD OF REVIEW

██ As this appeal comes to us from a grant of summary judgment, our task is to determine whether there is any genuine dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(f); *Taylor Elec. Co., Inc. v. First Mariner Bank*, 191 Md.App. 482, 488, 992 A.2d 490 (2010); *Wajer, et ux. v. Baltimore Gas & Elec. Co.*, 157 Md.App. 228, 240–41, 850 A.2d 394(2004). " 'A material fact is a fact the resolution of which will somehow affect the outcome of the case.' " *Matthews v. Howell*, 359 Md. 152, 161, 753 A.2d 69 (2000) (quoting *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985)). "Where a dispute regarding a fact can have no impact on the outcome of the case, it is not a dispute of material fact such that it can prevent a grant of summary judgment." *Am. Powerlifting Ass'n v. Cotillo*, 401 Md. 658, 667, 934 A.2d 27 (2007) (citing *Miller v. Bay City Property Owners Ass'n, Inc.*, 393 Md. 620,

631, 903 A.2d 938 (2006)). Likewise, " '[g]eneral allegations which do not show facts in detail and with precision are insufficient to prevent the entry of summary judgment.' " *Educ. Testing Serv. v. Hildebrant,* 399 Md. 128, 140, 923 A.2d 34 (2007) (quoting *Lynx, Inc. v. Ordnance Products,* 273 Md. 1, 7–8, 327 A.2d 502 (1974)).

If the record reveals that a material fact is in dispute, summary judgment is inappropriate. *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000). If there is no genuine issue of material fact, we review the trial court's grant of summary judgment to ascertain if it was legally correct. *Jahnigen v. Smith,* 143 Md.App. 547, 555, 795 A.2d 234 (2002). Finally, we bear in mind that, in "reviewing a grant of summary judgment, we construe the facts . . . in the light most favorable to the non-moving party." *Am. Powerlifting Ass'n,* 401 Md. at 667, 934 A.2d 27 (citing *Todd v. MTA,* 373 Md. 149, 155, 816 A.2d 930 (2003)).

## DISCUSSION

### I

Megan and the Trustee first contend that the circuit court erred in granting summary judgment in favor of Timothy because questions pertaining to whether her transfer of the home to the Trust constituted a fraud and whether there was fair consideration for that transfer were issues for the jury to decide. Specifically, they maintain that there was fair consideration for the transfer of the home to the Trust because Megan and Timothy had agreed to provide a place for Miller to live. They also argue that the trial court should have simply levied on the subject property, as opposed to setting aside the conveyance, given that Timothy's $30,000 judgment is nominal compared to the net equity in the property, which they assert is $303,000 and that, if the home is seized by Megan's creditors, she and her father might be displaced. For the reasons that follow, we disagree.

■ Timothy's action to vacate the fraudulent conveyance was governed by Maryland's Uniform Fraudulent Conveyance Act (MUFCA), which is codified at Md.Code (1975, 2005 Repl.Vol.), § 15–201 *et seq.* of the Commercial Law Article (C.L.). Under MUFCA, a conveyance is defined as "every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." C.L. § 15–201(c). A "conveyance is fraudulent as to creditors if it is made by a person who is 'insolvent or who will be rendered insolvent by it.'" *Molovinsky v. The Fair Employment Council of Greater Washington,* 154 Md.App. 262, 278, 839 A.2d 755 (2003) (quoting *Field v. Montgomery County (In re: Anton Motors),* 177 B.R. 58, 61 (Bankr.D.Md.1995)). "Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." C.L. § 15–204. Similarly, "[e]very conveyance made and every obligation incurred without fair consideration when the person who makes the conveyance or who enters into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." C.L. § 15–206. "A person is insolvent if the present fair market value of his assets is less than the amount required to pay his probable liability on his existing debts as they become absolute and matured." C.L. § 15–202(a). Under MUFCA, a debt "includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." C.L. § 15–201(e).

In her opposition to Timothy's motion for summary judgment, Megan argued that there was a dispute as to whether she was insolvent at the time the property was transferred to the Trust and whether the $30,000 balloon note, which was a joint liability between Megan and Timothy, constituted an existing debt under MUFCA, "given the relatively distant date of maturity." She also argued that there was a material issue of fact as to whether there was fair consideration for the

transfer. Megan did not, however, present any admissible evidence to support her arguments or otherwise dispute the facts presented by Timothy. She merely argued that the financial statement referenced in Timothy's motion for summary judgment did not actually show that she was insolvent because "there are issues of timing on the one hand, and whether the $30,000 listed was an 'existing debt' under Commercial Law Section 15–202(a), given the relatively distant date of maturity."

Timothy's assertion that Megan was insolvent at the time she conveyed the home to the Trust in May 2005 was substantiated by the financial statement that Megan filed in the underlying divorce action, which established her net worth as negative $30,000, the exact amount of the balloon note Megan and Timothy executed as part of their purchase of the home. Although, in her opposition to Timothy's motion for summary judgment, Megan argued that her obligation to pay the balloon note was a disputed fact, she also conceded that she and Timothy were individually and jointly liable for that debt. Megan failed to present any evidence or submit an affidavit to refute Timothy's claim that she was insolvent at the time of the transfer. It was Megan's burden to identify with particularity that there was a genuine dispute as to her insolvency at the time of the transfer and it is clear from the record that she failed to do so.

As to Timothy's claim that the transfer of the property from Megan to the Trust was made without consideration, Megan merely argued that the transfer was made to carry out the promise to her father. It is clear, however, that Charles did not preserve a life estate when he sold his home to Megan and Timothy, but merely contracted for the right to accommodations in their home, wherever they might live. As the circuit court ruled, Megan had no contractual obligation or moral duty to convey the home to the Trust in order to preserve any of Charles's rights because, if Megan and Timothy breached their contractual obligation to Charles, his remedy would be to sue for the fair value of his rental accommodations, not to the conveyance of the home. The May 5, 2005 quitclaim deed

stated that there was zero consideration and there was no evidence presented to refute that fact.

The Trustee likewise failed to identify with particularity a genuine dispute as to either Megan's insolvency at the time of the transfer or the lack of consideration. The Trustee failed to produce any admissible evidence to refute Timothy's contentions that the conveyance was not made upon a good consideration, that the transfer was made with a fraudulent intent on the part of Megan to hinder, delay or defraud him and that this intent was known by the Trustee. In short, the Trustee failed to produce any evidence to support the conclusion that the Trust purchased the property in good faith, without notice and for value. *See* C.L. § 15–203; *Oles Envelope Corp. v. Oles,* 193 Md. 79, 89, 65 A.2d 899 (1949) (a fraudulent conveyance will be vacated "unless the grantee took in good faith, without notice and for value.").

Moreover, a fraudulent conveyance can be proved by showing that a debtor conveyed property with an actual intent to defraud his or her current or future creditors. C.L. § 15–207 ("Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors."). As we recognized in *Meese II,* there can be no dispute that Megan intended, by making the transfer, to prevent Timothy from realizing a share of the property in the divorce proceedings. The Trust was drafted so that, upon Charles's death, the property would vest in Megan and not in Timothy, who retained no interest in the property. Although the home was clearly marital property, Megan conveyed it to the Trust in an effort to prevent Timothy from obtaining a judgment lien on the home to enforce any monetary award he might receive. It is clear, therefore, that Megan had actual fraudulent intent when she conveyed the home to the Trust for zero consideration.

As there was no genuine dispute of fact concerning Megan's insolvency at the time of the transfer, the lack of consideration

for the transfer, or that the Trust did not purchase the real property in good faith, without notice, and for value, the circuit court did not err in determining, as a matter of law, that Megan's conveyance of the property to the Trust was a fraudulent conveyance under MUFCA.

■ Having found that Megan fraudulently conveyed the property to the Trust, we conclude that the court acted properly in vacating the conveyance. *Oles Envelope Corp.*, 193 Md. at 89, 65 A.2d 899 ("a conveyance made by a husband before and in anticipation of his wife's suit for alimony or pending such suit, or after a decree has been entered therein in the wife's favor, to prevent her from obtaining alimony money, is fraudulent and may be set aside, unless the grantee took in good faith, without notice and for value."). Although Megan argues that the trial court should not have allowed Timothy to set aside the conveyance, but should have permitted him only to levy on or garnish the property as if the conveyance had not been made, C.L. § 15–209(a) establishes that either remedy is appropriate:

(a) *Setting aside a conveyance; levy on or garnishment of property conveyed.*—If a conveyance or obligation is fraudulent as to a creditor whose claim has matured, the creditor, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived titled immediately or immediately from such a purchaser, may:

(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy the claim; or

(2) Levy on or garnish the property conveyed as if the conveyance were not made.

As C.L. § 15–209(a) makes clear, the choice of remedies belonged to the creditor, in this case, Timothy. For all of these reasons, the circuit court did not err in granting summary judgment in favor of Timothy.

## II

Megan and the Trustee next assert that the circuit court erred in using the finding in the divorce action that Megan had dissipated a marital asset to find the existence of a fraudulent conveyance. She argues that the finding of dissipation in the divorce case did not mandate that the transfer be set aside. In short, she asserts that "[a] dissipation finding cannot be bootstrapped into a fraudulent conveyance finding as a matter of law. They are not co-extensive and they are not the same thing." Further, according to Megan, the trial court failed to allow the circumstances surrounding the original transfer and the intentions of Charles Miller to be considered.

We need not resolve the issue of whether a finding of dissipation of marital assets in a divorce action can establish, as a matter of law, a finding of fraudulent conveyance under MUFCA. As we have already recognized, Timothy's action to vacate the conveyance of the property to the Trust was based on MUFCA. Regardless of the divorce court's finding that Megan had dissipated marital property, Timothy presented ample evidence to establish, under MUFCA, that the conveyance was fraudulent and Megan failed to present any evidence of a genuine dispute of material fact. The circuit court did not err in failing to consider either the circumstances surrounding the original transfer or Charles's intention. The only circumstances necessary to consider in finding a fraudulent conveyance, in this case, were those set forth in MUFCA, specifically, Megan's insolvency at the time of the transfer and the lack of consideration. On those issues, there was no genuine dispute of any material fact and Timothy was entitled to judgment as a matter of law.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**