914 A.2d 1193

Christopher HILL

v.

Daniel KNAPP.

No. 45, Sept. Term, 2006.

Court of Appeals of Maryland.

Jan. 16, 2007.

Peter Max Zimmerman, Towson (Lee Saltzberg, Towson, on brief), for appellant.

James W. Bartlett, III (Alexander M. Giles, Semmes, Bowen & Semmes, P.C., on brief), Baltimore, for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

Christopher Hill, appellant, was injured when a load of plywood dropped on him from a forklift while he was working on a pier in Baltimore. Hill filed a state common law negligence action against the forklift operator, appellee Daniel Knapp. The primary issue we must decide is whether the federal Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950, preempts a state tort claim for damages by a longshoreman against a co-employee in the "twilight zone." We shall hold that the federal act preempts such a claim.

I.

On August 14, 2004, Christopher Hill, a dockworker, was on Pier C, Clinton Street, in Baltimore City, assisting the Rukert Terminals Corporation with the discharge of bundles of plywood from the vessel M/V TOFT ON. While performing this work, Hill was struck by a load of plywood dropped on him by a forklift operated by Knapp. Hill was a borrowed servant of Rukert,[1] Knapp was an employee of Rukert, and the two were

---

1. The President of the Rukert Terminals Corporation, John L. Coulter, stated in his affidavit that Hill "was an employee of a temporary labor supplier, Aerotek Commercial, a division of Aerotek, Inc./Onsite Commercial, a division of Onsite Companies, Inc. ('Aerotek')." Coulter also reported that Aerotek supplied temporary labor to Rukert pursuant to a Services Agreement.

co-employees.[2]

Hill filed a claim for compensation and medical expenses under the Maryland Workers' Compensation Act, Md.Code (1999, 2006 Cum.Supp.), § 9–101 *et seq.* of the Labor & Employment Article,[3] for accidental injury suffered in the course of employment. The Workers' Compensation Commission notified Hill in October 2004 of his award. Hill received compensation beginning on February 18, 2004 at a rate of $294 per week as well as necessary medical treatment and services as provided by the Labor and Employment Article, § 9–660 through § 9–664 and § 9–689 of the Maryland Annotated Code. The Commission's award listed Onsite Commercial Staffing as Hill's employer. Hill was eligible for compensation under the LHWCA, but he did not file a claim under the Act.[4]

Hill filed a Complaint and Demand for Jury Trial in the Circuit Court for Baltimore City against Daniel Knapp on June 2, 2005, alleging that Knapp was negligent in that "he failed to observe dockworkers around him, failed to stop in order to avoid an accident, failed to keep his vehicle under control, and failed to operate his vehicle in a reasonable and prudent manner." Hill sought one million dollars in compensation for the emotional and physical damages he suffered.

Knapp filed a Motion for Summary Judgment and Hill filed a Cross–Motion for Partial Summary Judgment. The Circuit Court held a hearing and granted Knapp's motion, denied Hill's Cross–Motion for Partial Summary Judgment, and en-

---

**2.** Knapp argued initially that Hill was under the direct supervision of Knapp, but later submitted that, "Knapp is not arguing that he was a supervisor of Hill for the purposes of the Maryland case law making certain supervisors immune from tort liability to workers whom they supervise." For our review of this case, it is uncontested that Hill and Knapp were co-employees.

**3.** Unless otherwise indicated, all subsequent Maryland statutory references herein shall be to the Labor and Employment Article, Md.Code (1999, 2006 Cum.Supp.).

**4.** Generally, a claim for compensation under the Longshore and Harbor Workers' Compensation Act must be filed within one year after the injury or death. 33 U.S.C. § 913(a) (2006).

tered summary judgment in favor of Knapp. The Circuit Court determined that "the remedies a state may apply within the twilight zone include tort remedies," but "it is still necessary to decide whether a particular provision of state law is preempted by federal law." In analyzing whether the LHW CA's prohibition against co-employee suits preempts state law, the trial judge examined the purpose of the preemption provision. The Circuit Court noted that Congress enacted the immunity provision because it was concerned with "the hazardous work in which the parties to this suit were engaged" and that depriving "a worker of the immunity conferred upon him would frustrate the purpose of the Act." The Circuit Court held that the LHWCA preempted the state co-employee claim.

Hill filed a timely appeal to the Court of Special Appeals. We granted certiorari on our own initiative prior to decision by that court to consider (1) whether the Longshore and Harbor Workers' Compensation Act precludes a state negligence claim against a co-employee in the "twilight zone," and (2) whether an employee who is eligible for benefits under the LHWCA is a "covered employee" under the Maryland Workers' Compensation Act. *Hill v. Knapp,* 393 Md. 477, 903 A.2d 416 (2006).

## II.

As originally enacted in 1927, the federal LHWCA, 33 U.S.C. § 901 *et seq.,* established a compensation scheme for maritime employees injured on navigable waters of the United States if recovery was unavailable through state workers' compensation law. *See Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 717–18, 100 S.Ct. 2432, 2435, 65 L.Ed.2d 458 (1980); *see also Calbeck v. Travelers Ins. Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962) (describing history of the LHWCA); *Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935 (3d Cir.1990) (providing detailed history of Supreme Court decisions interpreting LHWCA). As a result, longshoremen were provided, theoretically, with workers' compensation coverage regardless of the location of their injury. *Sun Ship,* 447

U.S. at 718, 100 S.Ct. at 2435. In practice, however, individuals injured at the boundary at which state remedies gave way to federal remedies were often forced to make a jurisdictional guess before filing a claim, and an improper guess resulted in, at best, additional expense and, at worst, foreclosure of the claim by statute of limitations. *Id.; Davis v. Department of Labor*, 317 U.S. 249, 254, 63 S.Ct. 225, 228, 87 L.Ed. 246 (1942).

Since passage of the LHWCA, several Supreme Court cases have interpreted the applicability of state and federal workers' compensation in order to address the jurisdictional challenges of particular claims. We note briefly the historical development of the key cases to provide context for our analysis of the 1972 amendments to the LHWCA and the leading Supreme Court case interpreting the 1972 amendments, *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980).

In *Davis*, the Supreme Court acknowledged that a distinct "border" between federal and state compensation schemes did not exist. *Sun Ship*, 447 U.S. at 718, 100 S.Ct. at 2435; *Davis*, 317 U.S. at 256, 63 S.Ct. at 229. Instead, the Court recognized a "twilight zone" of concurrent jurisdiction where state and federal coverage overlapped. *Davis*, 317 U.S. at 256, 63 S.Ct. at 229. Because it was difficult to determine whether state or federal law should apply in the "twilight zone," a case-by-case analysis was required to determine the permissible recovery scheme. *Sun Ship*, 447 U.S. at 718, 100 S.Ct. at 2435; *Davis*, 317 U.S. at 256, 63 S.Ct. at 229. In *Calbeck*, the Supreme Court further extended applicability of the LHWCA to "all injuries sustained by employees on navigable waters whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law." *Calbeck*, 370 U.S. at 117, 82 S.Ct. at 1198. *Calbeck* did not make federal compensation the exclusive remedy, but indicated that either state or federal law could provide compensation. *Sun Ship*, 447 U.S. at 719, 100 S.Ct. at 2435–36; *Calbeck* at 126–32, 82 S.Ct. at 1203–06. The Supreme Court also held that the acceptance of payments under

the state act "does not constitute an election of the remedy under state law precluding recovery under the Longshoremen's Act." *Calbeck,* 370 U.S. at 131, 82 S.Ct. at 1206.

In 1972, Congress made significant amendments to the LHWCA. *See* Oct. 27, 1972, Pub.L. 92–576, 86 Stat. 1251. The purposes of the 1972 amendments were to extend the coverage of the LHWCA landward beyond the shoreline of navigable waters, to raise the amount of compensation available to longshoremen, to eliminate the longshore worker's strict liability seaworthiness remedy against shipowners, to eliminate the shipowner's claims for indemnification from stevedores, and to promulgate certain administrative reforms. *Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor v. Perini North River Associates,* 459 U.S. 297, 313, 103 S.Ct. 634, 645, 74 L.Ed.2d 465 (1983); *see* S.Rep. No. 92–1125, at 1–2 (1972); H.Rep. No. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4698–4711. The 1972 amendments extended coverage to protect additional workers, for example, by amending 33 U.S.C. § 903(a) to include injuries that occurred "upon the navigable waters of the United States (*including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel*)." 33 U.S.C. § 903(a) (2006) (emphasis added to show 1972 amendment); Oct. 27, 1972, Pub.L. 92–576, 86 Stat. 1251.

Congress did not amend the sections of the LHWCA, adopted in 1959, that immunize workers from suits by fellow employees. Both sections 933(a) and 933(i) preserve the right of longshore and harbor workers to recover damages from third persons other than "the employer *or a person or persons in his employ.*" 33 U.S.C. § 933(a) (2006) (emphasis added to show 1959 amendment); Aug. 18, 1959, Pub.L. 86–171, 73 Stat. 391. Section 933(i), adopted in 1959, reads as follows:

"The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other

person or persons in the same employ: *Provided,* That this provision shall not affect the liability of a person other than an officer or employee of the employer."

S.Rep. No. 428, at 4–5 (1959); Aug. 18, 1959, Pub.L. 86–171, 73 Stat. 391; *see also Bynum v. The S.S. Mormacteal,* 188 F.Supp. 763 (E.D.Pa.1960) (noting that the 1959 amendments to § 933 insulate "not only the employer, but also the fellow employees of the injured party from any liability in damages to the injured party").

The Supreme Court interpreted Congress' 1972 amendments in *Sun Ship, Inc., v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). The five individuals injured in *Sun Ship* were eligible for benefits under the 1972 amended LHWCA, but each individual instead filed a claim for benefits under the Pennsylvania Workmen's Compensation Act with state authorities. *Id.* at 716, 100 S.Ct. at 2434. The injured workers' employer, Sun Ship, Inc., asserted that the federal LHWCA was the employees' exclusive remedy because the employees were injured after the effective date of the 1972 amendments, which had expanded jurisdiction of the LHWCA landward. *Id.* The Court stated the issue as follows:

> "The single question presented by these consolidated cases is whether a State may apply its workers' compensation scheme to land-based injuries that fall within the coverage of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), as amended in 1972. 33 U.S.C. §§ 901–950."

*Id.*

*Sun Ship* focused on Congress' intent through the 1972 amendments to provide relief for workers despite jurisdictional challenges. The Supreme Court reviewed the history of "twilight zone" jurisdiction and noted that *Davis* "effectively established a regime of concurrent jurisdiction" and *Calbeck* subsequently "further overlapped federal and state-law coverage for marine workers." *Id.* at 718, 100 S.Ct. at 2435. Justice Brennan, writing for the majority, emphasized that

*Davis* and *Calbeck* were still relevant to the interpretation of the 1972 amendments. The Court stated as follows:

> "Absent any contradicting signal from Congress, the principles of *Davis v. Department of Labor, supra,* and of *Calbeck v. Travelers Insurance Co., supra,* direct the conclusion that the 1972 extension of federal jurisdiction supplements, rather than supplants, state compensation law. Given that the pre–1972 Longshoremen's Act ran concurrently with state remedies in the 'maritime but local' zone, it follows that the post–1972 expansion of the Act landward would be concurrent as well. . . . The language of the 1972 amendments cannot be fairly understood as preempting state workers' remedies from the field of the LHWCA, and thereby resurrecting the jurisdictional monstrosity that existed before the clarifying opinions in *Davis* and *Calbeck*."

*Id.* at 719–20, 100 S.Ct. at 2436.

Justice Brennan emphasized that Congress adopted the 1972 amendments with knowledge that state programs provided fewer benefits and that Congress wanted to address the disparities between state and federal compensation schemes. The Supreme Court stated:

> "Workers who commence their actions under state law will generally be able to make up the difference between state and federal benefit levels by seeking relief under the Longshoremen's Act, if the latter applies . . . we find no evidence that Congress was concerned about a disparity between adequate federal benefits and *superior* state benefits."

*Id.* at 724, 100 S.Ct. at 2438–39. The Court held that a state may apply its workers' compensation scheme to land-based injuries that fall within the expanded coverage of the LHWCA and that injured longshoremen could receive an award under the state *and* federal acts because the two schemes are complementary rather than exclusive. *Sun Ship,* 447 U.S. at 720, 100 S.Ct. at 2436; *Hess Oil,* 903 F.2d at 948–49.

*Sun Ship* addressed state workers' compensation programs generally and did not specifically consider the context of a state negligence claim as is at issue in this case.

## III.

Before this Court, appellant Hill argues that the federal LHWCA does not preempt a negligence claim authorized by the Maryland Workers' Compensation Act against a co-employee for an injury that occurred where there is concurrent state and federal jurisdiction, *i.e.* the "twilight zone." Appellee Knapp maintains that appellant's state tort claim against co-employees is barred by § 933 of the Longshore and Harbor Workers' Compensation Act, which immunizes workers from suits by co-employees, and preempts state tort law. Appellee also argues that appellant is not a "covered worker" under § 9–223(a) of the Maryland Workers' Compensation Act and thus must seek compensation only through the LHWCA.

## IV.

We review *de novo* the Circuit Court's grant of summary judgment. *Rockwood Casualty Ins. Co. v. Uninsured Employers' Fund,* 385 Md. 99, 106, 867 A.2d 1026, 1030 (2005). In reviewing a grant of summary judgment, we independently determine first whether a dispute of material fact exists and only where such dispute is absent will we proceed to determine whether the moving party is entitled to judgment as a matter of law. *Remsburg v. Montgomery,* 376 Md. 568, 579, 831 A.2d 18, 24 (2003). We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party. *Rockwood,* 385 Md. at 106, 867 A.2d at 1030.

## V.

It is well established that the Maryland Workers' Compensation Act does not exclude tort actions between co-employees, but it does exclude an action in tort by an employee against his employer. Md.Code (2006), § 9–901 *et seq.* of the Lab. & Empl. Article; *Suburban Hospital v. Kirson,* 362 Md. 140, 145–46, 763 A.2d 185, 205 (2000); *Hutzell v. Boyer,* 252 Md. 227, 232, 249 A.2d 449, 452 (1969). We must discern

whether the federal LHWCA, sections 933(a) and (i), preempt a negligence claim authorized by the Maryland Workers' Compensation Act against a co-employee for an injury that occurred where there is concurrent state and federal jurisdiction, *i.e.* the "twilight zone."

Article VI, cl. 2, of the United States Constitution commands that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Under the Supremacy Clause, Congress may preempt a state law by express language, by intent to occupy the legislative field, or by implication to the extent that the state law actually conflicts with federal law and such a conflict arises when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.[5] *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541, 121 S.Ct. 2404, 2414, 150 L.Ed.2d 532 (2001); *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 869–74, 120 S.Ct. 1913, 1919–22, 146 L.Ed.2d 914 (2000); *Sweeney v. Savings First*, 388 Md. 319, 327–28 & n. 10, 879 A.2d 1037, 1041–42 & n. 10 (2005). The LHWCA lacks an express preemption clause regarding state negligence claims. *See* 33 U.S.C. §§ 901–950 (2006). Nor do the 1972 amendments of the LHWCA and their interpretation in *Sun Ship* demonstrate a Congressional intent to preempt any state legislation affecting events occurring within the twilight zone.[6] *See id.; Sun Ship*,

---

**5.** The principles of conflict preemption also apply when the state requirement actually conflicts with the federal requirement because compliance with both statutes is impossible. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963) (analyzing constitutionality of California statute that gauges maturity of avocados by standards different than those established by federal regulation). This aspect of conflict preemption is not relevant to the case *sub judice* because a conflict of standards is not at issue.

**6.** In 1984, Congress again overhauled the LHWCA. Congress did not modify the provisions granting immunity from co-employee negligence suits and did not amend the LHWCA to overrule *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). 33

447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458. Thus, we focus our inquiry on whether the state law actually conflicts with federal law.

 Our analysis is guided by the frequently made statement that "the purpose of Congress is the ultimate touchstone" in every preemption case. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992); *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 223, 11 L.Ed.2d 179 (1963). In the absence of specific preemption language, we look to the structure and purpose of the statute as a whole as revealed not only in the text, but through this Court's reasoned understanding of the way in which Congress intended the statute to affect longshoremen. *See Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485–86, 116 S.Ct. 2240, 2250–51, 135 L.Ed.2d 700 (1996); *Sweeney v. Savings First,* 388 Md. 319, 327, 879 A.2d 1037, 1041 (2005).

## VI.

The legislative history of the 1959 amendments provides us with insight as to Congress' purpose in immunizing workers from negligence suits by fellow employees. The House Report states that the House Subcommittee on Safety and Compensation was concerned with "suits by injured workers against co-employees which have resulted in large recoveries ultimately paid by the employer." H.R. REP. 86–229, at 3 (1959). Senate Report No. 86–428 describes in even greater detail Congress' rationale for immunizing co-employees from negligence suits. The Senate Report states, in pertinent part, as follows:

"The other major provision of the bill relates to the immunization of fellow employees against damage suits. The ratio-

---

U.S.C. § 933(a), (i) (2006); *Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935, 950 (3d Cir.1990). However, Congress did add a section providing that "any amounts paid to an employee for the same injury ... for which benefits are claimed under this chapter pursuant to any other workers' compensation law or [the Jones Act] ... shall be credited against any liability imposed by this chapter." 33 U.S.C. § 933(e); *Hess Oil,* 903 F.2d at 950.

nale of this change in the law is that when an employee goes to work in a hazardous industry he encounters two risks. First, the risks inherent in the hazardous work and second, the risk that he might negligently hurt someone else and thereby incur a large common-law damage liability. While it is true that this provision limits an employee's rights, it would at the same time expand them by immunizing him against suits where he negligently injures a fellow worker. It simply means that rights and liabilities arising within the 'employee family' will be settled within the framework of the Longshoremen's and Harbor Workers' Compensation Act." S.REP. No. 86–428, at 2 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2134, 2135. This legislative history indicates that Congress weighed the trade-offs between allowing or eliminating co-employee negligence suits and determined that injured workers were better served by avoiding protracted litigation and receiving certain, albeit sometimes smaller, payments. *See Perron v. Bell Maintenance & Fabricators, Inc.*, 970 F.2d 1409, 1412 (5th Cir.1992). Additionally, as mentioned in the House Report, employers benefitted by not being ultimately responsible for damages awarded in co-employee negligence suits.

Nothing in the legislative history of the 1972 amendments indicates that Congress changed its mind regarding the value of immunizing co-workers from negligence suits.[7] Indeed, the

---

7. Our review of the Senate and House Reports as well as the relevant portions of the Congressional Record did not uncover any commentary focused on 33 U.S.C. § 933 or immunization of co-employees from tort claims. S.REP.No. 92–1125, at 2 (1972); H.R.REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4708; CONG. REC. S30670–30674 (daily ed. Sept. 14, 1972); CONG. REC. S36265–36274 (daily ed. Oct. 14, 1972); CONG. REC. H36376–36389, H36390–36396 (daily ed. Oct. 14, 1972); CONG. REC. S37283 (daily ed. Oct. 18, 1972). In developing the 1972 amendments, Congress gave the "most careful consideration to the recommendations of the National Commission on state workmen's compensation laws contained in its report issued on July 21, 1972." S.REP. No. 92–1125, at 2 (1972); H.R. Rep. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4699. The National Commission's report is also silent in regards to immunization of co-employees from negligence suits. NATIONAL COMMISSION ON STATE WORKMEN'S COMPENSATION

1972 amendments did not modify § 933 and it is implicit throughout the legislative history that fellow workers were not to be held liable in tort. Both the Senate and House Reports state:

"It is important to note that adequate workmen's compensation benefits are not only essential to meeting the needs of the injured employee and his family, but, *by assuring that the employer bears the cost of unsafe conditions,* serve to strengthen the employer's incentive to provide the fullest measure of on-the-job safety."

S. REP. No. 92–1125, at 2 (1972); H.R.REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4699 (emphasis added).

Congress acknowledged that employers were only willing to increase benefits for injured workers if third party claims by longshoremen were reduced.[8] Thus, Congress amended the

LAWS, THE REPORT OF THE NATIONAL COMMISSION ON STATE WORKMEN'S COMPENSATION LAWS, Washington, D.C.: U.S. Government Printing Office, 1972. However, one of the Report's conclusions was that there is a continuing rationale for workers' compensation programs and that "workmen's compensation is preferable to negligence actions" because the determination of negligence tends to be expensive and the outcome uncertain and there is generally an intermingling of employee and employer responsibility in accidents. *Id.* at 119–20.

8. Employers had forestalled improvements in the LHWCA for over twelve years because they were being subjected to dual payments to injured longshoremen through the doctrine of seaworthiness. S.REP. No. 92–1125, at 9 (1972); H.R. REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4703. The no-fault concept of seaworthiness was "developed by the courts to protect seamen from the extreme hazards incident to their employment which frequently requires long sea voyages and duties of obedience to orders not generally required of other workers." S.REP. No. 92–1125, at 10 (1972); H.R. REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4703. As stated in the Senate Report:

"Since 1946, due to a number of decisions by the U.S. Supreme Court, it has been possible for an injured longshoreman to avail himself of the benefits of the Longshoremen's and Harbor Workers' Compensation Act and to sue the owner of the ship on which he was working for damages as a result of his injury. The Supreme Court has ruled that such ship owner, under the doctrine of seaworthiness, was liable for damages caused by any injury regardless of fault. In addition, shipping companies generally have succeeded in recovering the damages for which they are held liable to injured longshoremen

LHW CA in 1972 to eliminate the no-fault concept of seaworthiness and make vessels liable as third parties only on the basis of negligence. S.REP. No. 92–1125, at 2 (1972); H.R. REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4703. Although Congress preserved the right of injured workers to sue a vessel for negligence, the 1972 amendments significantly reduced the number of third-party actions and allowed employers to apply their financial resources to pay improved compensation benefits instead of litigation costs. S.REP. No. 92–1125, at 9 (1972); H.R. REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4702. As a result, Congress "place[d] vessels in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits." S.REP. No. 92–1125, at 10 (1972); H.R. REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4703. The House and Senate Reports note that the amendments continue to allow suits against vessels or other third parties for negligence, but we read this to allow only those third-party suits that were already allowed under § 933(a) and (i), *i.e.* suits in negligence against "any other person or persons in the same employ" were still precluded. *Id.*

In order to improve the benefits available to employees from their employers, Congress extended coverage of the LHWCA to shoreside areas. S.REP. No. 92–1125 (1972); H.R. REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698. The LHWCA was extended landward in 1972 specifically to eliminate the disparity in benefits available to longshoremen depending on "the fortuitous circumstance of whether the injury occurred on land or over water." S.REP. No. 92–1125, at 13 (1972); H.R. REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4708. Congress was particularly concerned with a disparity between adequate federal benefits and *inferior* state benefits. *Sun Ship*, 447 U.S. at 724, 100 S.Ct. at 2439. It was Congress' intent in extending the LHWCA

---

from the stevedore on theories of express or implied warranty, thereby transferring their liability to the stevedore company, the actual employer of the longshoremen."
S.REP. No. 92–1125, at 4 (1972).

landward "to permit a uniform compensation system to apply to employees who would otherwise be covered by this act for part of their activity." S.REP. No. 92–1125, at 13 (1972); H.R. REP. 92–1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4708. As the Supreme Court stated in *Sun Ship*, "we therefore find no sign in the 1972 amendments to the LHWCA that Congress wished to alter the accepted understanding that federal jurisdiction would coexist with state compensation laws" in the twilight zone. *Sun Ship*, 447 U.S. at 722, 100 S.Ct. at 2437–38.

 We conclude that the main purposes of the 1959 and 1972 amendments were to immunize longshoremen from co-employee negligence suits, to provide a uniform compensation system for injured maritime workers, regardless of whether their injury occurred on land or over water, and to eliminate dual recovery by employees indirectly from their employers through co-worker suits or directly through the seaworthiness remedy. We agree with appellant that "the purpose of the 1972 LHWCA amendments is to supplement, not supplant, state law," thereby enhancing benefits to injured workers, but we are of the opinion that the LHWCA and Maryland law are in direct conflict as to the maintenance of co-employee suits. We hold that allowing a state negligence claim stands as an obstacle to the accomplishment of Congress' goals of immunizing longshoremen from co-employee negligence suits and providing longshoremen with a uniform compensation system.[9]

Alabama considered this issue and reached the same conclusion as we reach today.[10] *Fillinger v. Foster*, 448 So.2d 321 (Ala.1984). In *Fillinger*, the longshoreman sued his co-em-

---

9. We acknowledge that Congress does not "cavalierly preempt state law causes of action" and neither does this Court. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996). Nevertheless, where state law conflicts with federal law, preemption of state law is appropriate. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541, 121 S.Ct. 2404, 2414, 150 L.Ed.2d 532 (2001); *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 869–74, 120 S.Ct. 1913, 1919–22, 146 L.Ed.2d 914 (2000).

10. The Supreme Court of South Carolina held that an employee who collected compensation benefits under the LHWCA may not file a cause

ployee for injuries allegedly sustained while working on the job. *Id.* at 322. As is the case with appellant Hill, the longshoremen applied for state workers' compensation benefits but did not apply for benefits under the LHW CA even though he was eligible for them. *Id.* The Supreme Court of Alabama stated:

> "We can perceive no greater conflict than that which would be presented if we allowed this employee to sue his co-employee because he was a land-based maritime worker, and a maritime worker injured on a navigable waterway would be precluded from maintaining such a suit; therefore, we are persuaded to hold that the exclusivity provisions of 33 U.S.C. § 933(i) apply and that the state action was barred."

*Id.* at 326.

We agree with the Alabama court's reasoning.[11] Permitting a negligence claim disrupts the uniformity of benefits Congress intended to provide to longshoremen in the 1972 amend-

---

of action against a negligent co-employee. *Smalls v. Blackmon,* 269 S.C. 614, 239 S.E.2d 640 (1977). In *Smalls,* the individual filing the negligence claim had already collected under the LHWCA and the Court held that the co-employee was not subject to suit because of the immunity granted him in 33 U.S.C. § 933. *Id.* at 641. *Smalls* was decided prior to *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980) and on different facts than the case *sub judice,* but the accident in *Smalls* occurred in the twilight zone and the court recognized that § 933 provided immunity to the co-employee. *Id.* The Supreme Court of South Carolina noted that the language of § 933 has been interpreted such that " 'it extends to the employer and fellow employee an absolute civil immunity.' " *Id.* (quoting *Nations v. Morris,* 483 F.2d 577, 589 (5th Cir.1973), *cert. denied,* 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477). *Smalls* did not address the role of the South Carolina state workers' compensation scheme.

11. The Supreme Court of Louisiana has considered whether common law suits against fellow employees were preempted by the LHWCA and came to a different conclusion. *Poche v. Avondale Shipyards, Inc.,* 339 So.2d 1212 (La.1976). We are not persuaded by *Poche* for the following reasons. First, the Louisiana Supreme Court decided the issue prior to *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), which acknowledged that federal law would preempt a conflicting state clause. *Id.* at 724 n. 6, 100 S.Ct. at 2438 n. 6. Second, the Louisiana Supreme Court based its conclusion on the

ments and does not further the availability of no-fault compensation.[12] Hill and Knapp were longshoremen operating within the jurisdiction of the LHWCA, and Knapp is entitled to the immunity established in § 933, even where Hill did not file a LHWCA claim. Maryland law, which conflicts with this immunity, must therefore yield.

We note also that *Sun Ship* perceived that preemption of certain clauses in a state compensation scheme might be necessary to ensure proper implementation of both the state and federal compensation statutes. *Sun Ship*, 447 U.S. at 724 n. 6, 100 S.Ct. at 2438 n. 6. Specifically, the Supreme Court acknowledged that it is appropriate to preempt a state compensation exclusivity clause that declares its award final because it was Congress' intent to allow an injured worker who first seeks inferior state benefits to then make a claim under the LHWCA to obtain the difference between state and federal benefits. *Id.* The Supreme Court stated:

"Most often, state workmen's compensation laws will not be treated as making awards thereunder final or conclu-

election of remedies doctrine, which the United States Court of Appeals for the Fifth Circuit held to be inapplicable in a LHW CA case. *See Landry v. Carlson Mooring Service*, 643 F.2d 1080 (5th Cir.1981); *Fillinger v. Foster*, 448 So.2d 321, 325 (Ala.1984); *Poche*, 339 So.2d at 1221. Third, the Louisiana Legislature amended the Louisiana workmen's compensation act to provide immunity for fellow employees before the Louisiana Supreme Court issued its decision in *Poche*. *Poche*, 339 So.2d at 1224 (Summers, J., dissenting) (reiterating that the Legislature's amendments make it clear "that no suit will lie in tort by an employee against a negligent co-employee for injuries or death sustained in the course and scope of their employment"). Finally, following *Poche* would undermine Congress' policy purposes for providing immunity to co-employees and we decline to endorse an element of state law that stands as an obstacle to Congressional intent. The Alabama Supreme Court also declined to follow *Poche*. *Fillinger*, 448 So.2d at 325.

**12.** We recognize that it is possible that Maryland benefits, even without the ability to file a negligence claim, may be superior to federal benefits and uniformity will not exist. However, as noted in *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), "this situation will be exceedingly rare." *Id.* at 724 n. 7, 100 S.Ct. at 2438 n. 7.

sive.... Admittedly, if a particular state compensation law provision does indisputably declare its awards final, a conflict with the LHWCA may possible arise where a claimant seeks inferior state benefits in the first instance.... At any rate, although the question is not directly before us, we observe that if federal preclusion ever need be implied to cope with this remote contingency, a less disruptive approach would be to preempt the state compensation exclusivity clause, rather than to preempt the entire state compensation statute."

*Id.* (citations omitted.)

In the case *sub judice*, where the state compensation scheme conflicts with federal law, state law is preempted.[13] The 1972 amendments and *Sun Ship* allow Maryland to apply its workers' compensation scheme to land-based injuries that fall within the expanded coverage of the LHWCA, but a

---

13. In *Hahn v. Ross Island Sand & Gravel Co.,* 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292 (1959), the Supreme Court allowed a worker injured in the twilight zone to pursue a negligence action for damages against his employer instead of accepting federal LHWCA benefits. The Oregon statute involved in *Hahn* provided that if an employer covered by the statute failed to secure workers' compensation coverage it would be subject to a negligence action in which it would be denied common law defenses. *Id.* at 273, 79 S.Ct. at 267. The employer in *Hahn* had not obtained coverage under the Oregon Workmen's Compensation Act and thus the employee was allowed to pursue a damages judgment against his employer. *Id.* at 273–74, 79 S.Ct. at 267–68. In *Hahn,* the state negligence liability functioned as an incentive to ensure that employers participated in the state workers' compensation scheme, which also ensured a seamless intersection between state and federal compensation coverage. *See Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935, 947 (3d Cir.1990). *Hahn* was decided prior to the 1959 amendments to the LHWCA, which granted immunity to co-employees in 33 U.S.C. § 933, and was decided prior to *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), which acknowledged that preemption of certain clauses in a state compensation statute was permissible to ensure proper application of both state and federal compensation schemes. *Id.* at 724 n. 6, 100 S.Ct. at 2438 n. 6. The Maryland Workers' Compensation Act contains a similar sanctions clause in § 9–509, but Hill's employer participated in the Act and therefore we do not address whether a tort claim against an employer would be preempted if an employer opted out of the Maryland Workers' Compensation Act.

related negligence claim against a co-employee is not permitted because it conflicts with the exclusivity provisions in 33 U.S.C. § 933.

The United States Court of Appeals for the Third Circuit considered whether a different exclusivity provision, 33 U.S.C. § 905(a), barred a state tort suit by an employee injured in the twilight zone against his employer in *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935 (3d Cir.1990).[14] The court analyzed the preemption issue and noted that the LHWCA, as amended in 1972, embraces a *quid pro quo* where the employer provides no-fault compensation in exchange for immunity from tort liability for damages. *Id.* at 951. The Third Circuit stated:

> "We are unable to distinguish state imposed negligence liability from federally imposed negligence liability, and the appellant has tendered no suggestion as to why Congress might have wanted to grant immunity from the latter and not the former. The appellant's judgment based on Virgin Islands' law is every bit as disruptive of Congress' *quid pro quo* as would be a negligence judgment based on federal maritime law."

*Id.* at 951–52. The court concluded that "the application of Virgin Islands tort law in situations like this does not further the availability of no-fault compensation for injured maritime workers; it simply obstructs the purposes of LHWCA by depriving maritime employers of their side of LHWCA's *quid*

---

**14.** 33 U.S.C. § 905(a) states as follows: "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee ... except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee ... may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904." 33 U.S.C. § 905(a) (2006).

*pro quo." Id.* at 953. Accordingly, the court held that § 905(a) of the LHWCA and the Supremacy Clause bar a state or territorial tort recovery against the employer.[15] *Id.* at 953. Although the statutory exclusion provision involved in the case *sub judice* differs, the *Hess Oil* analysis supports our conclusion that state tort claims are preempted if they conflict with the LHWCA.

We hold that a state law negligence claim against a co-employee, as authorized by the Maryland Workers' Compensation Act, stands as an obstacle to the accomplishment and execution of the full purpose and objectives of the LHWCA. *Lorillard Tobacco Co.,* 533 U.S. at 541, 121 S.Ct. at 2414; *Geier,* 529 U.S. at 869–74, 120 S.Ct. at 1919–22; *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Allowing a negligence claim is in direct conflict with Congress' intent to immunize longshoremen from co-employee negligence suits and to permit a uniform compensation system for injured maritime workers, regardless of whether their injury occurred on land or over water. In light of this direct conflict, we hold that the exclusivity provisions of the federal LHWCA are controlling and preempt negligence claims under the Maryland Workers' Compensation Act.

## VII.

We turn to appellee Knapp's assertion that Hill is not a "covered employee" under § 9–223(a) of the Maryland Workers' Compensation Act. We need not address this issue because of our holding on the issue of preemption. Preemption of the state negligence claim filed by Hill has rendered appellee Knapp not liable to Hill. Thus, Knapp no longer has any interest in Hill's ability to redeem benefits under the Maryland Workers' Compensation Act or the LHWCA. Be-

---

**15.** The United States Court of Appeals for the Fifth Circuit came to the same conclusion in *Rosetti v. Avondale Shipyards, Inc.,* 821 F.2d 1083 (5th Cir.1987), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988) ("Under the LHWCA, workers' compensation is the exclusive remedy for an injured employee against his employer."); *Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935, 952 (3d Cir.1990).

cause Knapp lacks a sufficient interest in whether Hill is a "covered employee," we decline to consider his position regarding Hill's status under the Maryland Workers' Compensation Act.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*