923 A.2d 34

**EDUCATIONAL TESTING SERVICE**

v.

**Elba HILDEBRANT.**

**No. 115, Sept. Term, 2006.**

Court of Appeals of Maryland.

May 10, 2007.

130

Jonathan E. Neuchterlein (Thomas P. Olson, Wilmer, Cutler, Pickering, Hale & Dorr, LLP, Washington, DC, David W. Lease, Smith, Lease & Goldstein, LLC, Rockville, all on brief), for petitioner.

Jeffrey P. Hildebrant (Hildebrant & Associates, PLLC, McLean, VA, on brief), for respondent.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER, (Retired, specially assigned), JJ.

RAKER, J.

This case arises out of the administration of a standardized test by Educational Testing Service ("ETS"), petitioner, to Elba Hildebrant, respondent. We granted certiorari to consider the following two questions:

1. Whether one contracting party, which commits an issue to the exclusive discretion of a second party, may nonetheless go to trial against the second party for relying in good faith on its agent's report merely by alleging that the agent wrote that report in bad faith and against the interests of the second party.

2. Whether a party suing for breach of the covenant of good faith and fair dealing may avoid summary judgment merely by alleging, without evidentiary support, that the moving party acted in bad faith.

*Educational Testing v. Hildebrant*, 396 Md. 11, 912 A.2d 648 (2006).

## I.

ETS administered the standardized Praxis Series School Leaders Licensure Assessment Test on September 11, 2004 at Montgomery College in Rockville, Maryland. ETS is a nonprofit corporation that develops, administers, and grades the

standardized Praxis test at issue in this case. The Praxis test is a standardized licensing examination required by many school districts, including Montgomery County Public Schools, for a teacher to become a County school principal. Hildebrant, a principal-intern at a Montgomery County elementary school, registered for the Praxis test and was among the candidates who took the test at Montgomery College on September 11, 2004. Dana Baker, a professor at Montgomery College, administered the test and monitored the room on behalf of ETS.

Before taking the test, a test taker is required to sign an acknowledgment agreeing to the conditions set forth in ETS's published "Information and Registration Bulletin," which provides detailed information about the Praxis test and ETS's testing policies. The Bulletin contains, for example, sections entitled, "Contact Information," "Registration Information," "On the Test Day," "Scores & Score Reports," and "Forms." The Bulletin lists the various test centers and codes for academic institutions. All candidates who take the Praxis test are sent a Bulletin beforehand.

The Bulletin addresses the consequences of breaking ETS's testing rules and procedures. In the "Scores & Scores Reports" section, ETS states that "ETS reserves the right to cancel any test score when, in ETS's judgment, a testing irregularity occurs, there is an apparent discrepancy in a test taker's identification, the test taker engages in misconduct or plagiarism, or the score is invalid for another reason." Misconduct is broadly defined. The Bulletin states the following regarding misconduct:

"When ETS or test center personnel find that there is misconduct in connection with a test, the test taker may be dismissed from the test center, or ETS may decline to score the test, or cancel the test score. Misconduct includes, but is not limited to, noncompliance with the 'Test Center Procedures and Regulations,' pages 10–12 of this Bulletin."

The "Test Center Procedures and Regulations" provide that scores may be canceled by ETS for actions such as, but not

limited to, "working on any test, or test section, when not authorized to do so, or working after time has been called." The "Test Center Procedures and Regulations" emphasize that test takers must comply with the test administrator's directions. The Bulletin includes the following pertinent paragraph:

"ETS reserves the right to take all action—including, but not limited to, barring you from future testing and/or canceling your scores—for failure to comply with test administration regulations or the test administrator/supervisor's directions. If your scores are canceled, they will not be reported, and your fees will not be refunded."

Hildebrant accepted the terms of the Bulletin by signing, in her own hand, the following certification standard:

"CERTIFICATION STATEMENT: (Please write the following statement below. DO NOT PRINT.) 'I hereby agree to the conditions set forth in the Registration Bulletin and certify that I am the person whose name and address appear on this answer sheet.'

"/s/ I hereby agree to the conditions set in the Registration Bulletin and certify that I am the person whose name and address appear on this answer sheet.

"SIGNATURE: /s/ E. Hildebrant DATE: /s/ 9/11/04 Month Day Year."

After the test was administered, Baker submitted a "Supervisor's Irregularity Report" to ETS. The report cited Hildebrant for an irregularity during two of the testing sessions; both irregularities were categorized as "misconduct." During Session I of the test, Baker's report stated that Hildebrant "refused to stop writing when time was called. Warning given. Material Taken." In Session II, Baker noted that Hildebrant "had to be instructed twice to stop work and close the test book. (She insisted on completing her thought.)."

ETS informed Hildebrant by letter on September 30, 2004 that it was considering canceling her scores because it had been reported that she had continued to work on a section of the test after time was called and failed to follow directions.

ETS stated that it had not yet made a final decision concerning the report of the irregularity, and would take no action until she responded in writing or October 28, 2004, whichever came first. ETS requested Hildebrant to provide a written statement providing any additional information to help explain the report of the irregularity.

Hildebrant responded to ETS by letter dated October 9, 2004. In her letter, Hildebrant stated that she did not engage in any irregularity and criticized the test proctor's "overzealous perception of the test procedures." Hildebrant informed ETS that she was "willing to accept that the staff may think they were doing what they were instructed to do to maintain the secure, standard conditions" of the test center, but that she had "conformed completely to those standards, and that the report to the contrary was an error in judgment on the part of the proctor."

ETS reviewed Hildebrant's response and concluded that Hildebrant had not followed the required testing procedures. As a result, ETS canceled Hildebrant's test scores and informed her of the decision by letter dated October 14, 2004. Hildebrant's counsel requested on October 18, 2004 that ETS reconsider its decision to cancel her scores, but ETS did not respond to this request.

Hildebrant filed a complaint in the Circuit Court for Montgomery County against ETS, alleging malicious defamation and breach of contract. Hildebrant amended her complaint to add Baker as a defendant on the malicious defamation count while deleting ETS as a defendant on that same count and to add a third cause of action sounding in negligence against ETS. Count one of the amended complaint, against Baker only, alleged that Baker defamed Hildebrant by falsely and maliciously implying to individuals within ETS that Hildebrant had acted dishonestly in taking the Praxis test. Count two, against ETS, alleged that ETS breached its contract with Hildebrant by failing to "fairly and accurately report her leadership assessment scores" to the Montgomery County Board of Education. Count three, against ETS, alleged that

ETS was negligent in failing to properly train and supervise Baker.

As part of discovery, Baker and Hildebrant completed affidavits and Baker was deposed on December 21, 2004. Baker testified that she had administered roughly ten to fifteen tests per year for the past eight years for ETS. Baker further testified that she was "an associate supervisor of a testing site" and that she "generally [has] no knowledge of what ETS does after the testing session is over." When asked how long Hildebrant continued to write after time was called during the second testing session, Baker stated that "it was a significant amount of time. I don't time it on my timepiece. More than 30 seconds, not five minutes."

Baker's affidavit provided information about her background and testing experience with ETS. The affidavit, dated January 18, 2005, stated as follows:

"1. I am currently a Professor in and Department Chair of the Department of Counseling at Montgomery College, Rockville campus. I was chosen as one of twelve faculty members at the college to receive a Faculty Outstanding Service Award for 2003–2004.

"2. I received a B.A. in psychology from The College of Wooster in 1981.

"3. I received a M.A. in counseling and guidance from Trinity College in Washington, DC in 1992.

"4. I am currently pursuing a Ph.D. at American University in Washington, DC.

"5. I have administered tests for Educational Testing Service ("ETS") and other testing companies for approximately ten years.

"6. On behalf of ETS, I administered the September 11, 2004 The Praxis Series: Professional Assessments for Beginning Teachers, The School Leaders Licensure Assessment test ("Praxis test") at Montgomery College. Assisting me in my duties, which included monitoring the testing room, was a room proctor, Ms. Jocelyn Lowry.

"7. One of the candidates who took the September 11, 2004 Praxis test that I administered at Montgomery College was Elba Hildebrant. I had never previously met Ms. Hildebrant, nor did I know anything about her before the test.

"8. On September 11, 2004, I filled out a "Supervisor's Irregularity Report" regarding Ms. Hildebrant. I provided this report to the test site supervisor, who sent the report on to ETS."

In opposition, Hildebrant filed an affidavit, stating, in pertinent part, as follows:

"1. I am a principal intern at an elementary school in Montgomery County School System in Maryland ("MCPS"). One of the requirements to become a principal in MCPS is to take and pass the Praxis II, School Leaders Licensure Assessment test ("Assessment Test"), which is administered by ETS.

"2. I registered by telephone with ETS to take the Assessment Test scheduled for September 11, 2004, for which I paid a fee of $465. I did not receive from ETS at any time a document entitled, "Registration Bulletin" or similar title.[1]

"2. I have read the Supervisor's Report of Irregularities.... Each statement on the report concerning my conduct during the administration of the Assessment Test is false in every respect and has no basis in fact whatsoever. These statements are so contrary to any reasonable understanding or interpretation of anything that could have been observed that I have readily concluded that they were made with the knowledge that they were false and with the intent to harm me personally."

ETS and Baker filed a Motion to Dismiss or, in the alternative, for Summary Judgment. Hildebrant filed an opposition to that motion. After a hearing on the motion, Judge John W.

---

1. At the motions hearing, Hildebrant's counsel clarified that ETS allowed Hildebrant, as an accommodation, to register for the Praxis test by phone because she was unable to complete an online registration. Hildebrant's counsel acknowledged that she was nonetheless subject to the terms in the Bulletin, however.

Debelius, III, granted summary judgment as to the breach of contract count and dismissed the defamation and negligence counts. The court concluded as follows:

"Well, I've considered the motion to the parties as well as the argument that we've heard on the record, and it seems to me that there's a contract. The contract has been acknowledged by plaintiff. And the contract did reserve to ETS the judgment to make those calls and it seems to me that it's inescapable that that's exactly what ETS did. I don't see the defamation here. I think that it does fail on both harm and lack of communication to someone else because the defendant Baker was acting as an agent and employee of ETS. And I think that with regard to the negligence, the same problem. The duty, the breach—I don't see that here." [2]

Hildebrant noted a timely appeal to the Court of Special Appeals as to the breach of contract claim. Before the Court of Special Appeals, Hildebrant argued that, in deciding whether to cancel the test scores, ETS must exercise its discretion in good faith, because in every contract, there exists an implied covenant that each of the parties thereto will act in good faith and deal fairly with the others. Hildebrant maintained that an issue of material fact existed as to whether ETS canceled the test scores in good faith.[3] ETS did not dispute

---

**2.** Hildebrant filed a motion to alter or amend judgment, arguing that summary judgment was improper on the breach of contract count, and asserting that an issue of material fact existed regarding whether ETS had exercised its judgment in good faith when it determined that Hildebrant had violated test procedures. ETS responded in opposition to the motion. The Circuit Court denied the motion.

**3.** The Court of Special Appeals summarized Hildebrant's argument as follows: (1) Hildebrant said in her affidavit that everything Baker said in the "Irregularity Report" concerning Hildebrant's failure to stop writing after time was called was false; (2) if what Baker said was false, then she knew it was false when she wrote the report; (3) Baker was, at all times here pertinent, ETS's agent; (4) ETS is bound by the knowledge of its agents; (5) because Baker knew the allegations of misconduct were bogus, then so did ETS; and (6) therefore, taking the evidence in the light most favorable to the movant, when ETS exercised

Hildebrant's position that it must act in good faith, but argued that Baker's knowledge could not be imputed to ETS because the Bulletin expressly reserves to ETS, not to test administrators, the judgment of whether to cancel a test score for misconduct.

The Court of Special Appeal analyzed the law of principal and agent and held that it was proper to impute Baker's knowledge to ETS. *Hildebrant v. Educational Testing,* 171 Md.App. 23, 34, 908 A.2d 657, 663 (2006). The intermediate appellate court held that summary judgment was granted improperly because there was a dispute of material fact. *Id.* at 37–38, 908 A.2d at 665. The court concluded:

> "Here there exists a material dispute of fact as to whether Ms. Baker made up her allegations of misconduct against Hildebrant. If she did make up those allegations, her knowledge of the false allegation is imputable to ETS and that imputed knowledge would suffice to show bad faith on the part of ETS."

*Id.* Accordingly, the Court of Special Appeals reversed the entry of summary judgment on the breach of contract claim and remanded for further proceedings. *Id.* ETS filed a petition for writ of certiorari, which we granted. *Educational Testing v. Hildebrant,* 396 Md. 11, 912 A.2d 648.

## II.

Before this Court, petitioner argues that the Court of Special Appeals applied agency law principles improperly by expanding the implied contractual covenant of good faith and fair dealing impermissibly into a mechanism for overriding explicit contractual terms. Petitioner asserts also that the intermediate appellate court erred in concluding that Hildebrant established a genuine dispute as to a material fact. Hildebrant responds in several ways: (1) that ETS acts through its agents and may not disavow its relationship with

---

its discretion to cancel the test scores, it did so in bad faith. *Hildebrant v. Educational Testing,* 171 Md.App. 23, 31, 908 A.2d 657, 661 (2006).

agents through a contract provision; (2) that the knowledge of Baker, as ETS's agent, in submitting a false report is imputed to ETS; (3) that Hildebrant met the evidentiary standard for overcoming a motion for summary judgment; and (4) that there is no valid public policy reason to insulate ETS from liability for the acts of its agents.

## III.

 This Court's review of the Circuit Court's grant of a motion for summary judgment is *de novo*. *Harford County v. Saks Fifth Avenue Distribution Co.*, 399 Md. 73, 923 A.2d 1, 2007 WL 1119877 (2007). In reviewing a grant of summary judgment, we independently determine first whether a genuine dispute of material fact exists and only where such dispute is absent will we proceed to determine whether the moving party is entitled to judgment as a matter of law. *Hill v. Knapp*, 396 Md. 700, 711, 914 A.2d 1193, 1199 (2007).

 The law in regard to the sufficiency of allegations in a response to a motion for summary judgment motion is well settled. In order to defeat a motion for summary judgment, the party opposing the motion must identify with particularity each material fact in genuine dispute and provide support for its contentions "by an affidavit or other written statement under oath." Md. Rule 2–501(b). An affidavit supporting or opposing a motion for summary judgment must set forth such facts as would be admissible in evidence. Md. Rule 2–501(c). Consequently, mere general allegations or conclusory assertions which do not show facts in detail and with precision will not suffice to overcome a motion for summary judgment. *See, e.g., O'Connor v. Baltimore County*, 382 Md. 102, 111, 854 A.2d 1191, 1196 (2004); *Beatty v. Trailmaster*, 330 Md. 726, 738, 625 A.2d 1005, 1011 (1993); *King v. Bankerd*, 303 Md. 98, 112, 492 A.2d 608, 615 (1985); *Dietz v. Moore*, 277 Md. 1, 5, 351 A.2d 428, 431 (1976); *Lynx, Inc. v. Ordnance Products*, 273 Md. 1, 7–8, 327 A.2d 502, 508–09 (1974); *Frush v. Brooks*, 204 Md. 315, 320–22, 104 A.2d 624, 626 (1954). We explained

the standard and the necessity for materiality of disputed facts as follows:

"The function of the summary judgment procedure is not to try the case or decide the issues of fact raised; it is merely to determine whether or not there is an issue of fact to be tried and if there is none, to cause judgment to b e rendered accordingly. At the trial level, the purpose of the hearing on the motion is to decide whether a real dispute as to material facts does exist; if the pleadings, depositions, admissions and affidavits (if any) show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment should be granted.

"A bare allegation in a general way that there is a dispute as to material facts is never sufficient to defeat a motion for summary judgment. General allegations which do not show facts in detail and with precision are insufficient to prevent the entry of summary judgment.

"Even where it is shown that there is a dispute as to a fact, when the resolution of that factual dispute is not material to the controversy, such dispute does not prevent the entry of summary judgment. Such a material fact must be one, the resolution of which will somehow affect the outcome of the case."

*Lynx,* 273 Md. at 7–8, 327 A.2d at 508–09 (citations omitted).

 We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party. *Harford County,* 399 Md. at 78–79, 923 A.2d at 4, 2007 WL 1119877 at *3. Ordinarily, we will uphold the grant of summary judgment only on the grounds relied upon by the trial court. Md. Rule 8–131. With these principles in mind, we turn to the question of whether the case *sub judice* was properly resolved by grant of summary judgment.

## IV.

We determine first whether Hildebrant has presented a genuine dispute of material fact sufficient to overcome a

motion for summary judgment. The material fact at issue in this case is *not* merely whether Hildebrant engaged in misconduct. In such a classic "he said, she said" situation, where the test administrator reports misconduct and the test taker denies such misconduct, the Bulletin clearly provides that ETS may, in its judgment, rely on its agent's report and cancel the test scores. Although such a "he said, she said" case might be sufficient to overcome a motion for summary judgment if the suit was between Baker and Hildebrant, it is not sufficient on a breach of contract action between Hildebrant and ETS, because, under the terms of the contract, ETS has the right to rely the report of its agent, Baker.

Here, the material fact at issue is whether ETS breached its contract with Hildebrant because it failed to *act in good faith* when it canceled her test scores. In every contract there exists an implied covenant that the parties to the contract will act in good faith when dealing with each other. *See, e.g., Food Fair v. Blumberg*, 234 Md. 521, 534, 200 A.2d 166, 174 (1964). Hildebrant alleges that the test administrator knowingly lied in her report, that this knowledge of the report's falsity is imputable to ETS, and therefore ETS did not act in good faith when canceling Hildebrant's scores because it knew the report was false. Thus, to demonstrate a genuine dispute of material fact regarding ETS's good faith, Hildebrant must show that Baker acted in bad faith, i.e., because Baker knew that the Supervisor's Irregularity Report she filed was false. ETS does not dispute that it must act in good faith, but it argues that Baker's knowledge, as an agent, is not imputable to ETS, the principal. We need not decide whether the knowledge of a testing administrator is imputable to ETS, because, even if we assume *arguendo* that Baker's knowledge is imputable to ETS, Hildebrant fails to establish by any evidence, under oath, that Baker acted in bad faith. Consequently, she has made no showing that ETS failed to act in good faith. Unless Hildebrant can show that there is a genuine issue of material fact regarding whether Baker acted in bad faith, she has no basis for a breach of contract claim against ETS.

The record to oppose summary judgment before the trial court consisted of Hildebrant's affidavit. Our review of the action of the Circuit Court is based on this same record. Hildebrant's affidavit stated, in pertinent part, as follows:

"Each statement on the [Supervisor's Irregularity] report concerning my conduct during the administration of the Assessment Test is false in every respect and has no basis in fact whatsoever. These statements are so contrary to any reasonable understanding or interpretation of anything that could have been observed that I have readily concluded that they were made with the knowledge that they were false and with the intent to harm me personally."

Hildebrant argues that this portion of her affidavit creates a genuine dispute of material fact because it indicates that the statements made by the administrator were not true, and "this, in turn, raises the clear inference that the test administrator falsified the report and, thus, acted in bad faith, which is a material fact as to whether ETS breached the contract."

Hildebrant's affidavit presents the classic case of "he said, she said." Baker reported that Hildebrant engaged in misconduct, and Hildebrant denies that the statements in the report are true. Hildebrant's affidavit fails to show facts that support her allegation that Baker acted in bad faith—and that, therefore, ETS did not act in good faith—when filing the Supervisor's Irregularity Report. *Beatty,* 330 Md. at 738, 625 A.2d at 1011 ("[M]ere general allegations which do not show facts in detail and with precision are insufficient to prevent summary judgment."). The affidavit consists only of a general denial and personal conclusion that the test administrator knowingly made a false report. Hildebrant presents *no* evidence that indicates a factual basis for her allegations. Thus, there is nothing other than Hildebrant's bare allegation that would lead the trial court to believe that Baker acted in bad faith.

Without any factual evidence to support her allegations, there is no *genuine* dispute as to a material fact. *Id.* To survive summary judgment, Hildebrant must show that it is genuinely disputed that Baker lied when reporting Hilde-

brant's testing conduct, because otherwise there is no dispute as to whether ETS acted in good faith. Hildebrant may not rest upon mere allegations or denials of ETS's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Hildebrant has not presented such facts.

■ In her brief to this Court, Hildebrant sets out additional facts that allegedly support her claim that the test administrator had a motive to falsify her report. For example, Hildebrant asserts that Baker could have overheard and been offended when she jokingly sang "Welcome to the Hotel California" before the test began, and that Baker may have overheard someone referring to her as "the Test Nazi." The additional factual allegations in briefs filed before this Court are not part of the trial court record and are not considered in our *de novo* review of the grant of summary judgment as they were not before the Circuit Court. *Harford County*, 399 Md. 73, 923 A.2d 1, 2007 WL 1119877 (2007).

Maryland Rule 2–501(d) provides that a party opposing a motion for summary judgment may set forth in an affidavit the reasons why essential facts could not be established. Based on the affidavit, the trial court may deny the motion, order a continuance, or enter any other order that justice requires. Md. Rule 2–501(d). H ildebrant did not avail herself of this procedure; she cannot now urge us to consider that "mandatory discovery had not been completed" and that she "has had little opportunity to develop any evidence in support of her claim." This Court considers only the record before the trial court, as Hildebrant acknowledges in her brief when she stated that "evidence not in the record cannot be considered by this Court."

■ Hildebrant further asserts that her unsworn letter to ETS, dated October 9, 2004, is additional evidence in support of her allegation that ETS did not act in good faith by canceling her scores because it relied upon Baker's report filed in bad faith.[4] We disagree for several reasons. First,

---

**4.** In the letter to ETS, Hildebrant asserted that Baker's report to ETS "simply reflects [Ms. Baker's] over-zealous perception of the test proce-

the letter is not a statement under oath. As Rule 2–501 makes clear, a response asserting the existence of a material fact shall be supported by an affidavit or other statement under oath. The letter alleges only that certain acts occurred. Hildebrant's unsworn letter does not allege that Baker acted in bad faith nor does it claim that the alleged occurrences referenced in the letter supplied Baker with a motive to lie and to lie specifically about Hildebrant's actions. Nor can we reasonably infer from the letter that these occurrences motivated Baker to retaliate against Hildebrant. Indeed, Hildebrant concludes her letter by stating, "I am willing to accept that the staff may think they were doing what they were instructed to do to maintain the secure, standard conditions you referred to in your letter."

In this case, we cannot *reasonably* infer any facts in favor of Hildebrant, as Hildebrant has not presented *any* facts to support her claim that Baker acted in bad faith. Hildebrant has not presented *facts* to show that Baker had any motive to lie or to act in bad faith. Noticeably absent from the affidavit in opposition to summary judgment, the only statement in this record under oath, is any reference to the facts that Hildebrant now relies upon. That Baker may have heard Hildebrant sing "Hotel California" or hear another test taker refer to Baker as the "test Nazi" was not in the affidavit or in any other statement under oath, such as a deposition or interrogatory. Hildebrant not only fails to present such facts and to support them by an affidavit or other statement under oath, but also fails to link how such facts caused Baker to make a report in bad faith which was then relied upon by ETS.

---

dures," and stated that "several events during the testing period corroborate this conclusion." Hildebrant noted that Baker lectured them between test sections about getting into the shoes of their students, discussed a long list of ways in which test takers cheat on exams, and lectured test takers before a test section after a cell phone inadvertently had rung during the previous section. Hildebrant also stated that "the proctor's rudeness was so pervasive" that some referred to Baker as the "Testing Nazi" as they walked out of the test.

The Court of Special Appeals held that Baker's knowledge is imputable to ETS. Assuming *arguendo* that we agree, there is nothing under oath here that demonstrates bad faith on the part of Baker. Hildebrant's affidavit presents a general, conclusory denial of misconduct and is not sufficient to establish a genuine dispute of material fact as to whether Baker acted in bad faith. Hildebrant must support her assertions of material fact by affidavit, discovery response, transcript of testimony, or other statement under oath that demonstrates the dispute of material fact. Md. Rule 2–501(b).

The trial court held that a contract existed between the parties, and that the contract reserved to ETS the judgment of whether to cancel a test-taker's scores. We agree. ETS has the right, under the Bulletin, to cancel test scores where ETS or test center personnel find that there is misconduct in connection with the test. Hildebrant wrote out and signed a certification statement indicating that she agreed to the conditions set forth in the Bulletin. Moreover, Hildebrant has acknowledged on record that she is a party to the contract with ETS. Baker's report that Hildebrant engaged in misconduct on the test triggered the terms of the Bulletin, and it was completely within ETS's rights under that contract to cancel Hildebrant's scores. Consequently, we hold that the trial judge was correct in granting summary judgment for ETS where Hildebrant acknowledged her acceptance of the contract with ETS and did not create a genuine issue of material fact as to whether Baker had acted in bad faith.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*